## Richmond

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TAXATION

V.

WELLMORE COAL CORPORATION, ET AL.

Record No. 811858.

September 7, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ.,
and Harrison, Retired Justice.

152

*Barbara M. Rose, Assistant Attorney General (Gerald L. Baliles, Attorney General; Kenneth W. Thorson, Senior Asst. Atty. Gen.; John G. MacConnell, Asst. Atty. Gen.*, on briefs), for appellant.

*William L. S. Rowe (R. Kenneth Wheeler; Stephen T. Gannon; William M. Richardson; Hunton & Williams*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This appeal involves a controversy between the Commonwealth of Virginia, Department of Taxation (the Department), and Wellmore Coal Corporation, National Coal Corporation, and United Coal Corporation (collectively, the Taxpayer) regarding whether various items of tangible personal property used in the mining industry are exempt from taxation under the Virginia Retail Sales and Use Tax Act (the Act), Code § 58-441, *et seq*. The challenged items are: (1) building materials used in construction of a coal tipple, (2) scales at the tipple which weigh trucks carrying coal from mines, (3) methanometers and first-aid equipment, (4) repair parts for coal trucks, (5) machinery, equipment, and supplies used to build and maintain haul roads, and (6) machinery, equipment, and supplies used to reclaim strip-mined land.

The Department assessed all items for taxation, and the Taxpayer, after exhausting its administrative remedies, filed an appli-

cation, pursuant to Code § 58-1130, to correct the alleged erroneous assessments. The trial court ruled that the materials used to erect the tipple, the scales, and the methanometers and first-aid equipment were exempt from taxation. The Department has assigned error to these rulings. The court also ruled that the repair parts for trucks, the machinery, equipment, and supplies used to build and repair coal haul roads, and the machinery, equipment, and supplies used to reclaim strip-mined land were not exempt. The Taxpayer has assigned cross-error to these rulings.

The Taxpayer relies upon Code § 58-441.6 which provides an exemption for "machinery or tools or repair parts therefor or replacements thereof . . . or supplies, used directly in processing, manufacturing, refining, mining or conversion of products for sale or resale." Thus, to be entitled to an exemption the challenged property must meet three requirements. First, it must be a machine, tool, or other industrial device. Second, the item, whether it remains personalty or is ultimately incorporated into realty, must be used *directly* in processing, manufacturing, refining, mining or conversion. Third, the purpose of the specified activity must be to provide a product for sale or resale.

When a taxpayer attacks an administrative decision of the State Tax Commissioner in a court proceeding, "the taxpayer is confronted with a presumption of validity attached to the decision of the [Commissioner] and the burden is on the taxpayer to prove that the assessment is contrary to law or that the [Commissioner] has abused his discretion and acted in an arbitrary, capricious or unreasonable manner." *Dept. of Taxation* v. *Lucky Stores,* 217 Va. 121, 127, 225 S.E.2d 870, 874 (1976).

The Constitution of Virginia, as revised in 1971, provides that "[e]xemptions of property from taxation . . . shall be strictly construed." Va. Const. art. X, § 6(f). This rule of strict construction stems from the Commonwealth's announced policy "to distribute the tax burden uniformly and upon all property." *Forst* v. *Rockingham,* 222 Va. 270, 276, 279 S.E.2d 400, 403 (1981); Va. Const. art. X, § 1. Therefore, statutes granting tax exemptions are construed strictly against the taxpayer, and "[w]hen a tax statute is susceptible of two constructions, one granting an exemption and the other not granting it, courts adopt the construction which denies the exemption." *Commonwealth* v. *Community Motor Bus,* 214 Va. 155, 157, 198 S.E.2d 619, 620-21 (1973). Indeed, "where there is any doubt, the doubt is resolved against the one claiming

exemption," *Golden Skillet Corp.* v. *Commonwealth*, 214 Va. 276, 278, 199 S.E.2d 511, 513 (1973), and "to doubt an exemption is to deny it." *Dept. Taxation* v. *Prog. Com. Club*, 215 Va. 732, 736, 213 S.E.2d 759, 762 (1975) (quoting *Perdue, Inc.* v. *State Dept. of Assess.*, 264 Md. 228, 232-33, 286 A.2d 165, 167 (1972)).

■ Code § 58-441.41, in effect at the time of these proceedings,[1] empowered the Commissioner "to make and publish reasonable rules and regulations not inconsistent with [the Act and other laws] for the enforcement of the provisions of [the Act] and the collection of revenues" thereunder. Although the construction of a tax statute by a state official charged with its administration is not binding upon us, it is entitled to great weight. *Webster* v. *Department of Taxation*, 219 Va. 81, 84-85, 245 S.E.2d 252, 255 (1978); *Winchester TV Cable* v. *State Tax Com.*, 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975). Guided by these principles of law, we consider the exemptions claimed by the Taxpayer.

### 1. *Building Materials Used to Erect the Tipple.*

■ The Taxpayer is in the business of mining, processing, and selling coal. Trucks haul coal from the Taxpayer's mines to its tipple at a different location, where the coal is cleaned and processed for sale. The tipple is a seven-story structure containing various types of machinery (*e.g.,* conveyors, screens, washers, separators, sieve bins, dryers, crushers, classifiers, pumps, filters, and a control panel). The structure contains, *inter alia,* a foundation, windows, floors, walls, work areas for employees, and a roof.

When the coal reaches the site of the tipple, it is transported by a conveyor belt from a storage area to the tipple's top level. There, flowing by gravity, the coal goes through various steps in which it is separated, screened, washed, crushed, filtered, and dried. When the process is completed, the marketable product is loaded into railroad cars located beneath the tipple.

The building materials which the Taxpayer claims are exempt consist of the concrete used in the construction of footings and floors of the structure, structural steel which frames and supports

---

[1] In 1980 Code § 58-441.41 was repealed and Code § 58-48.6 was enacted which states, *inter alia,* that "[t]he Commissioner shall have the power to issue regulations relating to the interpretation and enforcement of the laws . . . governing taxes administered by the Department of Taxation. . . ."

the structure, and the corrugated steel siding and roofing which protects the coal and machinery from the weather. The concrete floors and structural steel support and hold the various items of machinery in place within the tipple.

The Department exempted from taxation all machinery within the structure used to process coal, but taxed the concrete, structural steel, corrugated steel, and other building materials used to erect the tipple. In its construction of Code § 58-441.6, the Department issued mining guidelines which declared the following items taxable under the Act:

> II. Tangible personal property listed in (a) through (y) below is commonly used *indirectly* in mining or processing or in the manufacturing of coke for sale or resale and *is subject* to the sales or use tax.
>
> . . . .
>
> (i) Building materials such as corrugated roofing, siding, grating, structural steel, concrete, asphalt, and miscellaneous items which become a part of or are incorporated into real estate.
>
> . . . .
>
> (r) Materials incorporated into the construction of buildings which become a part of real estate such as tipples, cleaning plants, substations, supply houses, shops, tenant houses, explosive magazines, store and office buildings, sewage treatment plants and supplies, camp water systems and supplies, and bath houses.

(Emphasis in original.)

One of the Taxpayer's expert witnesses called the entire tipple (*i.e.*, the seven-story structure and all machinery therein) "a big old machine." He reasoned that the concrete and structural steel were essential because they supported the various items of machinery used to process the coal. The trial court agreed and ruled that the entire structure, including the steel and concrete, was one machine used to process coal, and, therefore, was exempt from taxation. We do not agree.

Our holding in *Webster* v. *Department of Taxation,* 219 Va. 81, 245 S.E.2d 252 (1978), is dispositive of this issue. Webster manufactured and sold brick. Like the Taxpayer in the present case, Webster claimed a tax exemption under Code § 58-441.6 on cer-

tain building materials (cement, reinforcing steel, rods, and wires) used in the construction of the facility housing its manufacturing machinery. It contended that "its entire manufacturing facility" was a machine, and "the contested items were 'used directly' in manufacturing." 219 Va. at 87, 245 S.E.2d at 256. We held to the contrary, stating:

We reject the taxpayer's contention that the entire manufacturing plant, including the outside oil storage tanks, constituted a machine entitled to a blanket exemption. We acknowledge, and the Department concedes, that each item was essential to the operation of the business of manufacturing and selling brick. But essential items which are not an immediate part of actual production are not exempt.

*Id.* Regarding the building materials themselves, we said:

The remaining items in controversy are the cement, reinforcing steel, rods, and wires used in construction of the plant floor. Webster says that the floor is actually a trackage system in which the concrete separates the tracks and protects the hoists that pull carts of bricks from one part of the manufacturing plant to another, so that the floor is useful only so long as the machinery remains in place. The automatic control system is undoubtedly essential to the manufacturing process used by Webster in this plant. But the floor supports the weight of the building, as well as the weight of the cars and tracks, and serves as a base for the automatic hydraulic equipment, electronically activated, buried under the concrete. Although it is used indirectly in the manufacturing process to expedite the work and to facilitate the movement of material and work product, the floor is not used directly in manufacturing.

219 Va. at 89, 245 S.E.2d at 257.

The Taxpayer seeks to distinguish *Webster* by asserting that in the present case the trial court made a finding of fact that the tipple, including the structure, is a machine. Relying upon Code § 8.01-680, the Taxpayer argues that we are bound by the trial court's finding because there is evidence supporting it (*i.e.*, the expert's opinion). Code § 8.01-680 provides that the judgment of the trial court "shall not be set aside unless it appears from the evi-

dence that such judgment is plainly wrong or without evidence to support it."

We previously have noted the heavy burden which rests upon a taxpayer seeking an exemption. We reiterate the principle that statutes granting exemptions are strictly construed against a taxpayer, and if any doubt exists it is resolved against him. Moreover, in *Webster* we expressly rejected the very argument advanced in the present case. In view of these established principles, we hold that the trial court's ruling is plainly wrong; the structure itself is not a machine.

### 2. *The Scales.*

■ Truck scales located at the tipple weigh the coal transported from mines before it is unloaded. The scales are used for the "blending of coal" which is necessary to meet customer specification for the marketable product.

Unquestionably, the scales are machinery; therefore, the determinative issue is whether they are "used directly in processing." Code § 58-441.3(p) defines the beginning and the end of processing:

> "*Manufacturing, processing, refining or conversion*" as used in this chapter, includes the production line of the plant starting with the handling and storage of raw materials at the plant site and continuing through the last step of production where the product is finished or completed for sale and conveyed to a warehouse at the production site. . . .

Thus, under the foregoing statutory definition, processing begins "with the handling and storage of raw materials" at the mining site. Clearly, therefore, weighing of the coal at the tipple is also a part of processing because it constitutes handling raw materials at a place where processing occurs.

■ Code § 58-441.3(q) defines "[u]sed directly" as "those activities which are an integral part of the production of a product, including all steps of an integrated manufacturing or mining process. . . ." Moreover, the Department by regulation,[2] defines

---

[2] Virginia Retail Sales and Use Tax Rules and Regulations, § 1-63 provides in pertinent part:

"Production" includes the production line of the plant starting with the handling and storage of raw materials at the plant site and continuing through the last step of

"production" with language identical to that defining "manufacturing, processing, refining or conversion" as set forth above and as contained in Code § 58-441.3(p).

We conclude, therefore, that the scales perform a function which is an integral part of coal processing and they are used *directly* in processing within the meaning of Code § 58-441.3(q). Thus, the trial court correctly ruled that the scales are exempt from sales taxation.

### 3. *Methanometers and First-Aid Equipment.*

The Department's Sales Tax Reg. § 1-63 provides that "[s]afety apparel and protective materials will be deemed to be used *directly* in production where furnished gratuituously by the employer to the production employee." (Emphasis added.) This suggests a Department policy decision that mining safety should be encouraged, which is a most worthwhile goal. The Taxpayer contended, and the trial court so held, that methanometers and first-aid supplies which the Taxpayer gratuitously provided to mining employees are exempt from taxation under this regulation.

Relying upon guidelines provided by its mining memorandum, the Department asserts that these items are not exempted. Paragraph I(h) of the Memorandum exempts "[s]afety apparel, protective materials, and self-rescuers," but Paragraph II(f) purports to impose the sales tax on "[f]irst aid supplies" and "detectors for . . . methane and other gases." The Department argues that the "exempted" items are used for protective purposes, while the "taxable" items are not. Finding this distinction arbitrary and unreasonable, we agree with the trial court's holding that methanometers and first-aid supplies are "protective materials" and, therefore, are exempt from the sales tax under the Department's Reg. § 1-63.

### 4. *The Assignments of Cross-Error.*

In the Taxpayer's three assignments of cross-error, it contends that the following property is exempt from sales taxation: (1) repair parts and supplies for trucks used to haul coal between mines and the tipple, (2) materials used to construct and maintain haul

production where the product is finished or completed for sale and conveyed to a warehouse at the production site.

roads from mines to public highways en route to the tipple, and (3) machinery and supplies used to reclaim strip-mined land. The trial court found that none of these items was used directly in the mining process and ruled that they were taxable.

The Department asserts that any transportation, to be exempt, must be limited to the production site. We do not agree. The Department's Sales Tax Reg. § 1-63 clearly explains the breadth of the mining exemption. It states:

> In the case of mining, the exemption generally ends at that point outside the excavation or well where the ore or mineral is entirely severed from the earth and is in such form as to be subject to transportation to another location *other than for further mining processing.*

(Emphasis added.) Conversely, therefore, when the ore or mineral is subject to "further mining processing," the exemption continues. Indeed, the State Tax Commissioner testified to this effect.

In the present case, transporting the coal to the tipple is part of the mining process. Therefore, the trial court erred in finding that the exempt activity is limited to transportation occurring on the plant site.

The materials used to build and maintain haul roads also are used directly in the process of mining and are tax-exempt. The road maintenance materials facilitate transportation of coal from the mines to the tipple for processing. As such, they are used directly in mining and processing coal. Again, the distinction between activities within the plant site or at another geographic location is irrelevant. The road materials are used directly in coal processing, notwithstanding the fact that the entire process does not take place within the mining site. Like the truck parts and supplies, these materials are exempt from taxation.

We also agree with the trial court's ruling that the materials used in reclamation of the strip-mined lands are taxable. When reclamation occurs, mining and processing have ended. Indeed, reclamation was foreign to the mining industry until it was mandated by law.

The Taxpayer argues, however, that because land reclamation is a mining-related activity now required by law, materials necessary for the activity are used directly in the mining and processing of coal. We disagree. The mere fact that materials are essential to

an activity mandated by law "does not in and of itself render the [materials] subject to exempt status." *Commonwealth* v. *United Airlines*, 219 Va. 374, 385, 248 S.E.2d 124, 130 (1978). *See also Community Motor Bus,* 214 Va. at 159, 198 S.E.2d at 621. Accordingly, we conclude that the trial court was correct in denying an exemption for the equipment and supplies used in land reclamation.

Therefore, we will modify the judgment of the trial court by disallowing the exemption for the building materials used to construct the tipple and by allowing an exemption for repair parts for coal trucks and for the machinery, equipment, and supplies used to build and maintain haul roads. Except as modified, however, the judgment will be affirmed.

*Modified and affirmed.*