ROGER D. ROBERTS,
T/A ALLSTATE BONDING COMPANY, ETC.

V.

BOARD OF SUPERVISORS OF ROANOKE COUNTY

Record No. 940059

January 13, 1995

Present: All the Justices

*Harry F. Bosen, Jr.* for appellant.
*Joseph B. Obenshain, Senior Assistant County Attorney* for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This is an appeal from a final order in a declaratory judgment proceeding brought by Roger D. Roberts, trading as Allstate Bonding Company (Roberts), agent and attorney-in-fact for American Bankers Insurance Company of Florida (American Bankers), against the Board of Supervisors of Roanoke County (the Board). In a petition filed June 3, 1992, Roberts sought a declaration that Code § 19.2-152.1 exempts him from having to obtain a revenue license required of professional bondsmen by a Roanoke County ordinance. After a hearing, the trial court declared that Roberts was required to obtain a revenue license and denied his petition. Agreeing with the trial court's declaration, we will affirm.

The ordinance in question was adopted by the Board on November 22, 1988, and codified as § 10-40 of the County Code. The ordinance provides that "[e]very person who, for compensation, enters into any bond or bonds for others, whether as principal or surety, shall pay for the privilege an annual license tax of five hundred dollars." Any person who violates the ordinance shall have his license revoked and pay a penalty of one thousand dollars. *Id.*

The ordinance was adopted pursuant to the authority of Code § 58.1-3724. This section permits counties or cities to require rev-

enue licenses of "every person who shall, for compensation, enter into any bond or bonds for others, whether as a principal or surety." The section also provides that "no such professional bondsman or his agent shall enter into any such bond or bonds in any such county or city until he shall have obtained such license."

Code § 58.1-3724 makes reference to § 19.2-152.1. The latter section provides that a revenue license authorized by § 58.1-3724 shall not be issued until the applicant has obtained a certificate from the judge of the circuit court of the county or city in which the applicant "desires to carry on the business of professional bondsman." The certificate must contain the judge's approval of the issuance of the license and his certification, among other things, that the applicant "is suitable to be so licensed."

Section 19.2-152.1 also details the requirements that must be met by a professional bondsman who uses real estate as security for the bond obligations he undertakes. Such a bondsman may be required to place a deed of trust on his real estate to secure the Commonwealth for the limit of his bonded indebtedness and to furnish an acceptable appraisal and a certificate of title covering the real estate. If not certified and licensed prior to July 1, 1989, the bondsman must provide "to the issuing court collateral on his bonds of $200,000."[1] In addition, the bondsman must file with the clerk of court a monthly report showing his outstanding bonds and the penalty of each.

The final paragraph of § 19.2-152.1 contains the language upon which Roberts relies to claim he is exempt from paying the license tax as a professional bondsman. The paragraph states in pertinent part:

Nothing in this section shall be construed to apply to guaranty, indemnity, fidelity and security companies doing business in Virginia or their agents and attorneys-in-fact, under the provisions of Chapter 24 of Title 38.2, except that agents and attorneys-in-fact of [such companies] entering into bonds for bail, appearances, costs or appeal in criminal cases, shall be required to obtain a certificate from the judge of the circuit court in which he desires to carry on the business of professional bondsman, certifying that the applicant is . . . suitable to be a licensed bondsman.

---

[1] A 1993 amendment to Code § 19.2-152.1 added a requirement for collateral on the bonds of agents of professional bondsmen. Acts 1993, ch. 423.

For a number of years both before and after enactment of Roanoke County's license ordinance, Roberts acted as an agent and attorney-in-fact of guaranty, indemnity, fidelity, and security companies licensed to do business in Virginia. On January 29, 1987, he was licensed by the State Corporation Commission to transact business as an agent of American Bankers. That license is currently in effect.

On September 9, 1987, pursuant to Code § 19.2-152.1, the Circuit Court of the City of Salem entered an order authorizing Roberts to act as a bail bondsman for the Twenty-Third Judicial Circuit, "upon the condition that [he] continue, at all times, to be licensed in this Commonwealth by the State Corporation Commission, Bureau of Insurance." Since that time, Roberts has entered into bonds as an agent and attorney-in-fact for American Bankers in the County of Roanoke, where his place of business is located, in the cities of Salem and Roanoke, and elsewhere in the Commonwealth. When he enters into a bond on behalf of American Bankers, he always checks the box marked "corporate surety" rather than the box marked "professional bondsman" on the form setting forth the terms of the bond.

After the Board adopted Roanoke County's license tax ordinance in 1988, Roberts did not apply for a license or pay the tax. In January 1992, he was charged on two summons with violating the ordinance for failure to pay the license tax for the years 1991 and 1992. The charges were dismissed when Roberts paid the tax under protest. He then instituted the present declaratory judgment proceeding. He sought return of the money he had paid as well as a declaration that Code § 19.2-152.1 exempts him from having to obtain a license as a professional bondsman.

■ Roberts argues that the trial court erred in holding that he was not exempt from having to obtain a revenue license. He says "[i]t is well-settled that statutes imposing licenses and business taxes are construed liberally in favor of the citizen and strictly against the government." We disagree. The correct rule is that exemptions from taxation must be strictly construed against the taxpayer. *Carr v. Forst*, 249 Va. 66, 453 S.E.2d 274 (1995); *Fairfax County v. Group Health Association*, 243 Va. 296, 298, 414 S.E.2d 602, 603 (1992) (exemption from license tax on businesses, professions, and occupations strictly construed); *Commonwealth v. Manzer*, 207 Va. 996, 1000, 154 S.E.2d 185, 189 (1967) (exemption from license tax on persons buying or selling merchan-

dise on commission strictly construed). Any doubt on the question whether an exemption applies must be resolved in favor of the taxing authority, and the burden is upon the taxpayer to show that he comes within the terms of the exemption. *Id.*

But whether the exemption at issue here is given a strict or a liberal interpretation, the result, in our opinion, is the same. We think that, in their entirety, the statutory provisions under review represent a detailed legislative scheme for the regulation and licensing of the business of professional bondsman.

This scheme contemplates that the courts shall be vested with overall supervision of the business of professional bondsman involving those who use real estate as security for their bond obligations. These bondsmen are required to establish and maintain with the appropriate courts proof of their financial responsibility.

Continuing, the legislative scheme contemplates that the supervisory role of the courts shall be limited with respect to the business of professional bondsman involving those who are agents or attorneys-in-fact of guaranty, indemnity, fidelity, and security companies doing business in Virginia pursuant to the provisions of Chapter 24 of Title 38.2 of the Code. These companies are "subject to inspection, supervision and regulation" by the State Corporation Commission, Code § 38.2-200, and neither they nor their agents and attorneys-in-fact are required to establish and maintain with the courts proof of their financial responsibility.

Completing the legislative scheme are provisions for the licensing of professional bondsmen. The scheme contemplates that all professional bondsmen, both those who use real estate as security for their bond obligations and those who are agents or attorneys-in-fact of guaranty, indemnity, fidelity, and security companies, must obtain revenue licenses to enter into bonds in counties and cities where such licenses are required.

But, Roberts argues, this construction of the statutes gives no meaning to the language appearing in the final paragraph of Code § 19.2-152.1: "Nothing in this section shall be construed to apply to guaranty, indemnity, fidelity and security companies . . . or their agents and attorneys-in-fact." Roberts says that " '[n]othing in this section' means **nothing in this section**, including the reference in *V.C.A.* § 19.2-152.1 [and] § 58.1-3724 regarding the revenue license."

Roberts maintains that he is not a professional bondsman but, rather, an agent and attorney-in-fact for an insurance company

and, as such, exempt from having to obtain a license. Roberts opines that "[h]ad the legislature intended for agents or attorneys-in-fact of such insurance companies to pay a revenue license, the language would have and should have been added to the final paragraph" of Code § 19.2-152.1. "Most significantly," Roberts says, the language was not added, and this displays "the clear intent of the General Assembly . . . to *not* impose [the] requirement [for a license] on Roberts and other agents and attorneys-in-fact of insurance companies licensed by the Bureau of Insurance in Richmond writing bail bonds in criminal cases."

We would be inclined to agree with Roberts if the final paragraph of Code § 19.2-152.1 ended after stating that "[n]othing in this section shall be construed to apply to guaranty, indemnity, fidelity and security companies . . . or their agents and attorneys-in-fact." However, the paragraph does not end there but goes on to state, "*except that agents and attorneys-in-fact* of guaranty, indemnity, fidelity and security companies *entering into bonds for bail, appearances, costs or appeal in criminal cases*, shall be required to obtain a certificate from the judge of the circuit court in which *[they desire] to carry on the business of professional bondsman*, certifying that the *applicant* is . . . *suitable to be a licensed bondsman*." (Emphasis added.)

■ Under settled rules of statutory construction, legislative enactments "should be interpreted, if possible, in a manner which gives meaning to every word." *Monument Associates v. Arlington County Board*, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991). And statutes which are closely related must be read and construed together. *N. and W. Ry. Co. v. Gilliam*, 211 Va. 542, 545, 178 S.E.2d 499, 502 (1971). Accordingly, we think the language of Code § 19.2-152.1 regarding agents or attorneys-in-fact for guaranty, indemnity, fidelity, and security companies who enter into bonds for bail, appearances, costs or appeal in criminal cases where they desire "to carry on the business of professional bondsman," must be read together with the language of Code § 58.1-3724, which characterizes a "professional bondsman" as a person who, "for compensation, enter[s] into any bond or bonds for others, whether as a principal or surety."[2] When so read, the statutory language displays the clear legislative intent that such

---

[2] This characterization is gleaned from that language of Code § 58.1-3724 which states: "The governing body of any county or city may by ordinance require that every person who shall, for compensation, enter into any bond or bonds for others . . . shall obtain a revenue

agents and attorneys-in-fact shall be deemed professional bondsmen.

■ Furthermore, we think the language of Code § 19.2-152.1 concerning the necessity that an "applicant" be certified as "suitable to be a licensed bondsman," must be considered along with the language of Code § 58.1-3724 that "no such professional bondsman or his agent shall enter into any such bond or bonds in any . . . county or city [that has enacted a revenue license ordinance] until he shall have obtained such license." When so considered, the statutory language displays the clear legislative intent that such agents or attorneys-in-fact must obtain revenue licenses.

Indeed, given the language following the words "except that" in Code § 19.2-152.1, one is constrained to ask for what else might an agent or attorney-in-fact of guaranty, indemnity, fidelity, and security companies be an applicant if not for a license to carry on the business of professional bondsman? And for what credible reason would the General Assembly have required that such an agent or attorney-in-fact obtain a certificate that he is suitable to be a licensed bondsman if it was intended to exempt him from having to obtain a license?

■ The construction we have given the statutory language at hand observes the settled rule that legislative enactments "should be interpreted, if possible, in a manner which gives meaning to every word." *Monument Associates*, 242 Va. at 149, 408 S.E.2d at 891. The declaratory judgment entered below, requiring Roberts to obtain a revenue license, also observed the settled rule. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

license . . . and no *such professional bondsman* . . . shall enter into any such bond or bonds in any such county or city until he shall have obtained such license." (Emphasis added.)