Present:  All the Justices

CITY OF WINCHESTER
                            OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.    Record No. 950013          November 3, 1995

AMERICAN WOODMARK CORPORATION

        FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                    John E. Wetsel, Jr., Judge


                                I.

        In this appeal, we consider whether Code §§ 58.1-1100

and -1101 authorize a city to tax certain personal property

owned by a manufacturer.

                                II.

        Relying upon the provisions of Code §§ 58.1-1100 and

-1101(A), American Woodmark Corporation filed a pleading

referred to as an "Application to Correct Erroneous

Assessments of Local Taxes and Claim for Tortious Violation

of Constitutional Rights" against the City of Winchester.

American Woodmark sought a refund of $464,637 for taxes it

had paid during the years 1989 through 1992.

        Code § 58.1-1100 states in pertinent part:
            Intangible personal property, including
        capital of a trade or business of any person, firm
        or corporation, . . . is hereby segregated for
        state taxation only.

Code § 58.1-1101(A) states in pertinent part:
            A.  The subjects of taxation classified by
        this section are hereby defined as intangible
        personal property [taxable by the state]:

                            . . . .

            2.  Capital which is personal property,
        tangible in fact, used in manufacturing . . .
        businesses.  Machinery and tools, motor vehicles
        and delivery equipment of such businesses shall
        not be defined as intangible personal property for
        purposes of this chapter and shall be taxed
        locally as tangible personal property according to

the applicable provisions of law relative to such property.

American Woodmark alleged that its personal property is used in its manufacturing business and, therefore, is classified as intangible personal property under the provisions of Code § 58.1-1101(A)(2), not subject to local taxation under the provisions of Code § 58.1-3500. In response, the City asserted that American Woodmark's furniture, fixtures, office equipment, and computer equipment located in Winchester, are not used directly in a manufacturing facility in Winchester and, therefore, cannot be classified as intangible personal property. Accordingly, the City claimed that such property is subject to local taxation.

The trial court held that the personal property in question was classified as intangible personal property pursuant to Code §§ 58.1-1100 and -1101 and, therefore, was not subject to local taxation. The trial court entered a judgment including postjudgment interest in favor of American Woodmark. We awarded the City an appeal.

### III.

The litigants have stipulated the relevant facts. American Woodmark, a Virginia corporation, maintains its corporate headquarters in Winchester. American Woodmark's executive officers, accounting personnel, credit management personnel, computer systems managers and operators, senior sales marketing personnel, operations and customer service personnel, and senior manufacturing officers work at the headquarters. "Functions performed at the corporate

headquarters . . . include establishing and monitoring overall corporate direction and strategy, overall management of American Woodmark's business, consolidated reporting of its financial information, approving extensions of credit to prospective customers, selling and marketing of cabinets and vanities produced by other American Woodmark facilities, invoicing sales, collecting accounts receivable, paying purchase invoices, maintaining a company wide computer network, and fulfilling the accounting, tax and regulatory compliance functions required to manage and operate the company's business activities."

American Woodmark purchases green lumber, other raw materials, and component parts and uses these items to manufacture kitchen cabinets and bathroom vanities at certain manufacturing facilities located in several states. American Woodmark does not manufacture any kitchen cabinets or bathroom vanities either at its corporate headquarters or at any other location in Winchester.

American Woodmark has distribution facilities, warehouses, service centers, and sales offices throughout the United States. These facilities are part of "a computer network which is controlled by and operates through a large mainframe computer located at American Woodmark's corporate headquarters in . . . Winchester. . . . The computer system is used to provide data and information to the appropriate company personnel to enable . . . them to make informed decisions and to manage their areas of responsibility." This computer system is an integral part of American

Woodmark's corporate operations and is used for such vital purposes as: the acquisition of raw materials and components; distribution and sales of cabinets and vanities; inventory control; and billing and accounts receivables. The computer system is not directly used in product design or research and development.

IV.

A.

The City argues that American Woodmark's personal property located at its corporate office is subject to local taxation because American Woodmark's headquarters is not a manufacturing business under the provisions of Code § 58.1-1101(A), and the personal property in issue is not "used in" that business. Alternatively, the City contends that if the property is used in a manufacturing business within the City, it is a part of the "machinery and tools of" that manufacturing business and thus taxable under the provisions of Code § 58.1-1101(A)(2).

To buttress its position, the City asserts that the intangible property located in American Woodmark's corporate headquarters cannot be deemed capital used in a manufacturing business because American Woodmark does not manufacture any products within Winchester's geographical boundaries. The City further argues that Code §§ 58.1-1100 and -1101 are tax exemptions and must be strictly construed against the taxpayer.

American Woodmark contends that it is a manufacturing business within the plain meaning of Code §§ 58.1-1100 and

-1101 and that the furniture, fixtures, office equipment, and computer equipment in its corporate headquarters are "used in" its manufacturing business even though no products are specifically manufactured in Winchester. We agree with American Woodmark.

We first determine whether Code §§ 58.1-1100 and -1101(A)(2) are tax exemptions, construed against American Woodmark, or limitations on the City's power to tax personal property, construed against the City. In another context, we have broadly defined "exemption" as "[f]reedom from a general duty or service; immunity from a general burden, tax, or charge." National R.R. Passenger Corp. v. Catlett Volunteer Fire Co., Inc., 241 Va. 402, 410, 404 S.E.2d 216, 220 (1991) (quoting Black's Law Dictionary at 571). Another authority defines "exemption" as "freedom from any charge or obligation to which others are subject." Webster's Third New International Dictionary 795 (1986 ed.).

Code §§ 58.1-1100 and -1101(A)(2) do not provide freedom from the City's personal property tax to which other entities are subject, but rather classify certain personal property, tangible in fact, as intangible personal property and segregate that property for state taxation only. See City of Roanoke v. Michael's Bakery Corp., 180 Va. 132, 143-54, 21 S.E.2d 788, 793-98 (1942) (discussing history of segregation and classification of personal property for taxation). These statutes also prohibit the City from assessing a personal property tax upon property within this classification.

And, it is well established in Virginia that a municipal corporation, such as the City, can only derive its taxing power through positive grants of authority from the General Assembly.  Whiting v. Town of West Point, 89 Va. 741, 743, 17 S.E. 1, 2 (1893).  Therefore, we hold that Code §§ 58.1-1100 and -1101(A)(2) reflect the General Assembly's decision not to grant a specific taxing power to the City, and these statutes must be treated as general tax statutes.

Thus, the following principle is applicable here:
> [S]tatutes imposing taxes are to be construed most strongly against the government, and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used.  Whenever there is a just doubt, 'that doubt should absolve the taxpayer from his burden.'

Commonwealth Natural Resources, Inc. v. Commonwealth, 219 Va. 529, 537-38, 248 S.E.2d 791, 796 (1978); accord, Commonwealth v. P. Lorillard Co., 129 Va. 74, 81-82, 105 S.E. 683, 685 (1921).

We also observe that when we interpret unambiguous statutes, such as Code §§ 58.1-1100 and -1101(A)(2), we apply the plain meaning rule.
> While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity.  Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

City of Virginia Beach v. ESG Enterprises, Inc., 243 Va. 149, 152-53, 413 S.E.2d 642, 644 (1992).

Applying these principles, we hold that American Woodmark's personal property in question constitutes capital used in manufacturing businesses that is not subject to taxation by the City.  We find no language in Code §§ 58.1-1100 or -1101(A)(2) which requires that capital be used in a manufacturing facility <u>physically</u> located within the geographical boundaries of Winchester.  Accordingly, we decline the City's invitation to construe Code § 58.1-1101(A)(2) as requiring that a manufacturer maintain a manufacturing facility within the City's geographical boundaries or that the manufacturer's capital, which is personal property, tangible in fact, be used "directly" in the manufacturing process.  These limitations simply do not appear in Code § 58.1-1101(A)(2).  And, as we recently said, "[w]hen the General Assembly 'has spoken plainly' on a subject, we must not 'change or amend its enactments under the guise of construing them.'"  <u>City of Martinsville</u> v. <u>Tultex Corp.</u>, 238 Va. 59, 63, 381 S.E.2d 6, 8 (1989).

B.

Alternatively, the City argues that even if "American Woodmark's personal property is '<u>used in</u>' a manufacturing business, its computer system and office equipment are 'machinery and tools . . . <u>of</u> such business' and not exempt from personal property tax."  The City relies upon the following portion of Code § 58.1-1101(A)(2) which states that "[m]achinery and tools . . . of [manufacturing] businesses shall not be defined as intangible personal property for purposes of this chapter and shall be taxed

locally as tangible personal property according to the applicable provisions of law relative to such property." American Woodmark argues, and the trial court held, that American Woodmark's computer system and office equipment in its headquarters are not "machinery and tools" within the meaning of Code § 58.1-1101(A)(2).

Since 1950, Virginia's tax commissioner has opined that the phrase "machinery and tools" contained in Code § 58.1-1101(A)(2) and its precursors means machinery used in the actual process of manufacturing. See Commonwealth v. Carter, 198 Va. 141, 146-47, 92 S.E.2d 369, 373 (1956) (construction of taxation statute by tax commissioner charged with its enforcement is entitled to great weight); accord, Commonwealth v. Wellmore Coal Corp., 228 Va. 149, 154, 320 S.E.2d 509, 511 (1984). Likewise, the Attorney General has consistently opined that "'machinery and tools used in a particular manufacturing business' are the machinery and tools which are necessary in the particular manufacturing business and which are used in connection with the operation of machinery which is actually and directly used in the manufacturing process." 1985-1986 Att'y Gen. Ann. Rep. 316 at 317; see also 1987-1988 Att'y Gen. Ann. Rep. 590.

Even though the General Assembly has been aware of the Attorney General's interpretation of the phrase "machinery and tools" as used in Code § 58.1-1101(A)(2), the General Assembly has taken no action to modify that definition. And, we have repeatedly held that the General Assembly is

presumed to have knowledge of the Attorney General's interpretation of statutes, and the General Assembly's failure to make corrective amendments evinces legislative acquiescence in the Attorney General's interpretation. Browning-Ferris, Inc. v. Commonwealth, 225 Va. 157, 161-62, 300 S.E.2d 603, 605-06 (1983); Richard L. Deal and Assoc. v. Commonwealth, 224 Va. 618, 622, 299 S.E.2d 346, 348 (1983); Albemarle County v. Marshall, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975). Therefore, we hold that American Woodmark's furniture, fixtures, office equipment, and computer equipment are not "machinery and tools" within the meaning of Code § 58.1-1101(A)(2) because these items are not used in connection with the operation of machinery which is actually and directly used in the manufacturing process.

V.

The City argues that the trial court erred by awarding postjudgment interest against it. The City contends that judgment interest may only be awarded on a refund of local taxes if provision for the payment of interest is contained in an ordinance adopted by the affected local government in accordance with Code § 58.1-3991. The City observes that it has adopted no such ordinance. American Woodmark argues that it is entitled to judgment interest as permitted by Code § 8.01-382. We agree with the City.

> Code § 58.1-3987 states in relevant part:
>     If the court is satisfied from the evidence
> that the assessment is erroneous . . . the court
> may order that the assessment be corrected . . . .
> If the tax has been paid, the court shall order
> that it be refunded to the taxpayer, with interest
> if authorized pursuant to § 58.1-3991.

Code § 58.1-3991 states:
> The governing body of any county, city or town may provide by ordinance that all erroneously assessed taxes refunded under the provisions of this article be repaid with interest at a rate not to exceed the rate imposed by such locality for delinquent taxes. Such interest shall run from the date such taxes were required to be paid or were paid, whichever is later.

Code § 8.01-382 states in relevant part:
> Except as otherwise provided in § 8.3-122, in any action at law or suit in equity, . . . the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The judgment or decree entered shall provide for such interest until such principal sum be paid. If a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded shall bear interest from its date of entry, at the rate as provided in § 6.1-330.54, and judgment or decree entered accordingly.

Contrary to American Woodmark's assertion, we must apply Code §§ 58.1-3987 and -3991 in this appeal because these are statutes of specific application which take precedence over Code § 8.01-382, a statute of general application. "[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, . . . where they conflict, the latter prevails." Dodson v. Potomac Mack Sales & Service, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991) (quoting Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979)). The plain and unambiguous language in Code § 58.1-3987 permits a trial court to order interest only if such interest is authorized pursuant to Code § 58.1-3991. The City, however, did not enact an ordinance pursuant to Code § 58.1-3991 which would permit an

award of interest against it.  Therefore, the trial court erred by awarding interest on the "assessed taxes refunded" against the City.

VI.

In view of our disposition of this appeal, we need not consider the City's remaining arguments.  Additionally, we do not consider the City's constitutional arguments because they are not the subject of an assignment of error.  Rule 5:17.  Accordingly, the judgment of the trial court will be affirmed in part, reversed in part, and we will enter final judgment here.

Affirmed in part,
reversed in part,
and final judgment.