## CIRCUIT COURT OF FAIRFAX COUNTY

Cisco Systems, Inc., et al.

v.

Kenneth W. Thorsen,
Tax Commissioner

August 17, 2005

Case No. (Law) 219609

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on March 17, 2005, as Defendant's Demurrer to CISCO System's Petition for Correction of Erroneous or Improper Assessments of Sales Tax and for Refund of Excess Taxes Paid. At that time, the Court took the matter under advisement and asked the Respondent to style its pleading as a Plea in Bar. After reviewing the appropriate memoranda of law, considering oral argument, and additional briefs by both sides, the Court reaches the findings and conclusions stated below.

*Background and Petition*

On December 30, 2003, Cisco Systems, Inc., and Cisco Systems Sales and Services, Inc. (collectively "CISCO") filed a petition for Correction of Erroneous or Improper Assessments of Sales Tax and for Refund of Excess Taxes Paid. Under Va. Code Ann. § 58.1-609.6, July 1, 1999, certain types of Internet equipment are exempt from taxation by the

Commonwealth of Virginia. Petitioner relies on Va. Code Ann. § 58.1-1825 to apply for a refund of excess taxes paid by its customers for the period of December 2000 to December 2003.

CISCO, a California-based company, supplies Internet solutions to various Internet providers in order to facilitate access to the Internet. CISCO's products include the equipment, software, and services necessary to provide Internet access. CISCO is essentially a "wholesale" provider; that is, while CISCO does not provide access to the Internet directly to consumers, it provides the network access that allows its customers, other Internet Service Providers (ISPs) to allow their customers to access the Internet.

In July 1999, the Virginia Legislature passed an amendment to Va. Code Ann. § 58.1-609.6, which exempts purchases of certain hardware, and software used to access the Internet receives a tax exemption. These media-related exemptions are contained within the definitions of Va. Code Ann. § 58.1-602.

To obtain the refund requested, the Petitioner relies on the Attorney General's Opinion of March 15, 2000 ("the AG Opinion"), which finds that the definitions in § 58.1-602 are broad enough to apply to purchasers who are "wholesale" providers of Internet services as well as "retail" providers.[1] CISCO is the former, a "wholesale" provider who provides the access used by other companies who sell directly to end-users. The Petitioner asserts that the exemption applies to the equipment and software itself, and whoever purchases it is entitled to exemption. The Petitioner also claims that, since the Attorney General's Opinion was not widely publicized, many companies who could take advantage of the exception have not done so.

CISCO asks for a correction, and reimbursement, of those assessments made between December 2000 and December 2003 and states that, to the extent that it passed those costs along to customers, it will reimburse those customers, minus the costs of obtaining the refund.

## Tax Commissioner's Response

The Tax Commissioner filed a demurrer to the above action and relies on affirmative defenses. The Commissioner contends that the rulings of the tax commissioner, the official charged with levying and collecting the tax in question, should carry more weight than the opinions

---

[1] ISPs such as AOL and Compuserve are providers who provide Internet services directly to consumers.

of the Attorney General. The Commissioner cites to three different Tax Commissioner opinions; the March 17, 2000, Opinion (which was released only two days after the AG opinion), the March 29, 2001, Opinion, and the August 31, 2004, Opinion. The Commissioner argues that these opinions, which narrowly interpreted the provisions of § 58.1-609.6, are presumed to be *prima facie* correct, and that the Petitioner has the burden of proving otherwise. In addition, the Tax Department argues that CISCO is not the proper person to bring the current action; that the individual customers must file a petition for assessment and reimbursement. After oral argument on March 17, 2005, the Commissioner amended, styling the pleadings as a Plea in Bar.

### Defendant Commissioner's Plea in Bar

The Commissioner breaks ISPs down into two categories; "access providers" and "content providers." CISCO is considered an "access provider" as it provides access to the Internet for other ISPs that provide access and content, such as AOL, CompuServe, Earthlink, and Netcom. CISCO provides the wholesale service that allows companies such as these to access the Internet while they, in turn, allow end-users to access the Internet. CISCO does not have direct contact with end-users such as the average family user.

The Commissioner argues that the three rulings by the Tax Commissioner that address whether or not the exemption applies to both kinds of ISPs are in direct conflict with the Attorney General Letter issued on March 15, 2000. The Commissioner then offers three arguments as to why CISCO should not be entitled to either a reassessment or refund:

1. That the language of the statute is unambiguous in that it specifically addresses ISPs that provide services to end-users and not wholesale ISPs;

2. That the Tax Commissioner's interpretation of the Exemption and Code is the proper one, and not the Attorney General's; and

3. If the language of the statute is to be considered ambiguous, the legislature intended that the Exemption be narrowly applied.

### The Plain Language Argument

The Commissioner combines the definitions within the code to come to the conclusion that the providers of Internet service must be of the type that allow end-users to "access proprietary and other content, information, electronic mail, and the Internet as a part of a package of services sold to

end-user subscribers." "Internet service" means a service that enables users to access proprietary and other content, information electronic mail, and the Internet as a part of a package of services sold to end-user subscribers. Va. Code Ann. § 58.1-602, Definitions. Because of this plain-language use, the statute should apply only to ISPs such as AOL or CompuServe; the argument of the Commissioner is that the Exemption applies to users, and not equipment.

CISCO counters by arguing that the plain language applies to the equipment, and not necessarily to the user of that equipment. CISCO points out that the Commissioner has split that section of § 58.1-609.6(2) off from the first part that begins "Broadcasting equipment." CISCO also points out that all the other exemptions in this code section apply to equipment and/or media and not to users or publishers.

### Analysis of the Plain Language Argument

"It is well settled that 'when the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language. We must determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result'." *Shelor Motor Co. v. Miller*, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001). This Court must essentially determine two issues; one, whether the language of the statute is plain and unambiguous and, two, the intent of the General Assembly reflected in those words.

A plain-meaning reading of the introductory sentence of § 58.1-609.6 states "The tax imposed by this chapter or pursuant to the authority granted in §§ 58.1-605 and 58.1-606 shall not apply to the following. . . ."

The section then goes on to list seven numbered paragraphs, with one, Paragraph 6, having two subparts. Each individually-numbered paragraph lists types of equipment or other specific, tangible items which are further defined by their usage. The paragraph in question is subparagraph 2.

> Broadcasting equipment and parts and accessories thereto and towers used or to be used by commercial radio and television companies, wired or land based wireless cable television systems, common carriers or video programmers using an open video system or other video platform provided by telephone common carriers, or concerns which are under the regulation

and supervision of the Federal Communications Commission and amplification, transmission, and distribution equipment used or to be used by wired or land based wireless cable television systems, or open video systems or other video systems provided by telephone common carriers.

Va. Code Ann. § 58.1-609.6(2).

It is apparent that the statute, on its face, applies to specific equipment or usable items, in other words what is entitled to the exemption. Nowhere within the statute does the General Assembly address who may take the exemption. In order to determine who the General Assembly meant could take the exemptions, the Court looks to other sources.

### Legislative Intent; The Attorney General's Opinion

The Court looks first at the argument over whose opinion carries more weight: those of the Tax Commissioner or that of the Attorney General. The AG Opinion is addressed to the Honorable William C. Mims and squarely addresses the issue this Court has before it. "You inquire regarding the applicability of the sales and use tax exemption in § 58.1-609.6(2) of the Code of Virginia to either equipment used in providing Internet access service directly to end-users or to equipment and software used to enable other companies to provide such service to end-users." 2000 Va. AG LEXIS 21 (Va. AG 2000). The hypothetical advanced by Senator Mims addresses a situation involving an ISP that provides services in two ways:

> You present a hypothetical situation in which a company provides Internet service in two ways. The company sells Internet service directly to end-users and, therefore, is an Internet service provider. In addition, the company sells "Internet access" to other Internet service providers that sell such service directly to end-users. The company calls the first activity "retail sales" and the second activity "wholesale sales."

2000 Va. AG LEXIS 21 (Va. AG 2000). In the instant case, CISCO provides only "wholesale sales" under the analysis used in the AG Opinion. Because "the language used by the General Assembly in defining "amplification, transmission, and distribution equipment" is not entirely free from ambiguity," the Opinion also does an analysis of the various definitions contained within subparagraph 2, the applicable section. *Id.* at 5. The

Attorney General found the language used by the General Assembly was intended to have a broad, rather than restrictive, interpretation. "It is my opinion that the definitions and exemption are sufficiently broad to include both the entity using equipment to provide Internet access service directly to end-users and the entity using equipment to enable other entities to provide such service to end-users." 2000 Va. AG LEXIS 21 (Va. AG 2000).

The Commissioner argues that its interpretation of the exemption is the correct interpretation, rather than the AG's, because under *Winchester TV Cable v. State Tax Comm'r*, 216 Va. 286, 217 S.E.2d 885 "the construction of a statute by a State official charged with its administration is entitled to great weight." (Commissioner's Memorandum in Support of Demurrer, p. 7.) The Commissioner also argues that its "interpretation of the [statutory] exemption takes precedence over an 'advisory opinion' issue by an official not charged with administration and enforcement of the tax laws." (*Id.* at 7.) The Commissioner offers no direct authority, however, that supports this contention.

*Legislative Intent; The Tax Commissioner's Opinions*

The Commissioner cites to three "Rulings of the Tax Commissioners" dated March 17, 2000, March 29, 2001, and August 31, 2004. Each of these rulings is in response to an individual inquiry about the sales tax exemption outlined in Va. Code Ann. § 58.1-609.6(2). In each of these opinions, the Commissioner does an analysis of an individual taxpayer and renders a decision. The August 2004 opinion, however, specifically addresses the AG Opinion of March 15, 2000. "The Department is aware of OAG Opinion 00-005 but does not acquiesce in or follow its interpretation." (Tax Commissioner Ruling, August 31, 2004.) The Tax Commissioner goes on to state that "[t]he statutory language makes it very clear that exemption is available only to those ISPs that offer proprietary and other content and electronic mail as part of a package to end-user subscribers." *Id.* This Ruling is signed by Kenneth W. Thorsen, the Respondent in the instant case.

*Analysis of the Attorney General versus Tax Commissioner Opinion Argument*

While it is not binding on this Court, an Opinion of the Attorney General is "entitled to due consideration." *Twietmeyer v. City of Hampton*, 255 Va. 7387, 393, 497 S.E.2d 858, 861 (1998). "This is particularly so when the

General Assembly has known of the Attorney General's Opinion, in this case for five years, and has done nothing to change it. 'The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view'." *Beck v. Shelton*, 267 Va. 482, 492, 593 S.E.2d 195, 200 (2004) (citing *Browning-Ferris, Inc. v. Commonwealth*, 225 Va. 157, 161-62, 300 S.E.2d 603, 605-06 (1983)).

In the instant case, the General Assembly has been on notice for five years that the Attorney General considers the provisions of § 58.1-609.6 to include ISPs who provide "wholesale" services as well as ISPs who provide "retail" services to end-users. The General Assembly has had more than just notice; the AG Opinion of March 15, 2000, answers a direct question by Senator Mims as to how the tax exemption is applied – to "wholesale" providers or "retail" providers. The General Assembly, as opposed to simple notice, has a direct answer to a direct question by one of its members. In spite of a clear determination by the Attorney General that § 58.1-609.6 applies to both types of ISPs, the General Assembly has taken no steps to amend that section. This evinces more than simple acquiescence; in this Court's opinion this shows the General Assembly's agreement with that interpretation.

The Commissioner argues that it is the body charged with interpreting the tax code. "The Tax Commissioner shall have the power to issue regulations relating to the interpretation and enforcement of the laws of this Commonwealth governing taxes administered by the Department. Such regulations shall not be inconsistent with the Constitutions and applicable laws of this Commonwealth and of the United States." Va. Code Ann. § 58.1-203. But it is the function of the courts of this Commonwealth to ensure that such interpretations are consistent with existing law. "Any regulation promulgated as provided by subsection B of § 58.1-203 shall be sustained unless unreasonable or plainly inconsistent with applicable provisions of law." Va. Code Ann. § 58.1-205.

In spite of the Commissioner's arguments for judicial notice and weight, the Court finds that, if the interpretation of the Tax Commissioner on this issue is inconsistent with the current law, it cannot be sustained.

### *The Narrow-Application of the Statute in the Face of Ambiguous Language Argument*

The Commissioner also argues that, even if the language of the statute is ambiguous, then the narrow-construction should apply; basically, that ISPs that deliver to end-users (which in its interpretation means ISPs

such as AOL and CompuServe) are entitled to the exemption, and not "wholesale" ISPs. In addition, the Commissioner argues that legislative history mandates that the statute be narrowly construed to apply only to end-user oriented ISPs and not to wholesale ISPs such as CISCO. The Commissioner includes a fiscal statement and refers to it as "legislative history."

The Court finds this argument repetitive and wholly unpersuasive in view of the plain-meaning requirement, and, for the reasons found below, addresses only the Commissioner's first two arguments in its analysis.

*Analysis*

When considering whether or not an assessment of tax is correct, courts are required to take notice of decisions rendered by the Tax Commissioner. "The Tax Commissioner shall have the power to issue regulations relating to the interpretation and enforcement of the laws of this Commonwealth governing taxes administered by the Department. Virginia Code § 58.1-203. And the Commissioner's construction of a tax statute, while not binding upon this Court, is entitled to great weight." *Virginia Dept. of Taxation v. Blanks Oil*, 255 Va. 242, 244-45, 498 S.E.2d 914, 916 (1998) (citing *Department of Taxation v. Wellmore Coal Corp.*, 228 Va. 149, 154, 320 S.E.2d 509, 511 (1984); *Webster v. Department of Taxation*, 219 Va. 81, 84-85, 245 S.E.2d 252, 255 (1978)).

When a taxpayer asserts that a tax is improperly assessed, the taxpayer has the burden of proof. "In the protest of a tax assessment-collection, it is the 'burden of the applicant . . . to show that the assessment or collection complained of is erroneous or otherwise improper'." Va. Code Ann. § 58.1-1825. The taxpayer must demonstrate that the Tax Commissioner's interpretation of the applicable code section does not comport with the intent of the General Assembly, or that the assessment is plainly wrong. Taxation of property is considered to be the rule and not the exception. *E.g.*, *Department of Taxation v. Progressive Community Club of Washington County, Virginia, Inc.*, 215 Va. 732, 213 S.E.2d 759 (1975). Also, exemptions from tax are to be construed against the taxpayer. "Exemptions of property from taxation are. to be strictly construed against the taxpayer." *See, e.g.*, *Id.* at 734; *Commonwealth v. Research Analysis Corp.*, 214 Va. 161, 198 S.E.2d 622 (1973).

"If a statute is susceptible of two constructions, one granting an exemption and one denying the exemption, courts will adopt the construction which denies the exemption." *Progressive Community Club,*

215 Va. at 736 (citing *Commonwealth v. Community Motor Bus Co.*, 214 Va. 155, 157, 198 S.E.2d 619 (1973)). And, as the Commissioner has pointed out in his demurrer and memorandum, the decisions of the Commissioner are accorded great weight. "Additionally, construction of a statute by a State official charged with its administration is entitled to great weight. *E.g., Commonwealth v. Research Analysis Corp.*, 214 Va. 161, 163, 198 S.E.2d 622 (1973). The Tax Commissioner is authorized to administer the tax laws. Va. Code Ann. § 58.1-202. Assessments of tax by the Department are deemed prima facie correct. Va. Code Ann. § 58.1-205(1)." *Boehringer, Inc. v. Department of Taxation*, 40 Va. Cir. 541 (1996).

But statutes must be interpreted according to the language of the statute; that is, the Court cannot read language into the statute that simply does not appear. "Taxing statutes must be construed strongly in the taxpayer's favor, and will not be extended by implication beyond the clear import of the statutory language." *Shelor Motor Co. v. Miller*, 261 Va. 473, 478-79, 544 S.E.2d 345, 350 (2001) (citing *City of Winchester v. American Woodmark*, 250 Va. 451, 456, 464 S.E.2d 148, 152 (1995); *Commonwealth v. General Elec. Co.*, 236 Va. 54, 64, 372 S.E.2d 599, 605 (1988)).

The Commissioner has arrived at its conclusion that the legislature intended to differentiate between "wholesale" and "retail" ISPs by parsing the language of the statute and examining subparagraph 2 in isolation. But a complete reading of the statute reveals that each subparagraph relates to what is exempted from taxation, and not to whom the exemption applies. It is a long-standing rule that statutes are read in their entirety, and not stretched and strained into a meaning not expressed by the legislature.

> Under basic rules of statutory construction, we examine Code § 58.1-3511(A) in its entirety, rather than by isolating particular words or phrases." *Cummings v. Fulghum*, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001); *Earley v. Landsidle*, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999); *Ragan v. Woodcroft Vill. Apartments*, 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998). When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language. *Cummings*, 261 Va. at 77, 540 S.E.2d at 496; *Earley*, 257 Va. at 370, 514 S.E.2d at 155; *Ragan*, 255 Va. at 326, 497 S.E.2d at 742. We must determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of

394

the statute would yield an absurd result. *Cummings*, 261 Va. at 77, 540 S.E.2d at 496; *Earley*, 257 Va. at 369, 514 S.E.2d at 155; *Ragan*, 255 Va. at 325-26, 497 S.E.2d at 742.

*Shelor Motor Co. v. Miller*, 261 Va. 473, 544 S.E.2d 345 (2001).

Both sides acknowledge that the language of § 58.1-609.6 is controlling; the only issue here is how that language is read. The Court finds the case of *Carr v. Forst*, 249 Va. 66, 68, 453 S.E.2d 274 (1995), to be particularly instructive.

In *Carr*, the appellant taxpayer appealed a decision in the trial court that granted the Tax Commissioner summary judgment on the basis that the items sold by the taxpayer were not exempt from sales tax. The taxpayer in *Carr* distributed magazines to the general public that advertised residential real estate for sale. The taxpayer contended that the magazines were exempt from the retail sales and use tax under former Va. Code § 58.1-608(A)(6)(c).

The Tax Commissioner in *Carr* had interpreted the tax exemption to apply to some publications, but not to others.

> Consistent with this ruling, the Commissioner, on brief, states that "application of the exemption depends on the purpose of the publication in question; whether the publication is intended to promote the sale of goods and/or services or intended to communicate ideas and information." The exemption does not apply to the magazines in the present case, the Commissioner asserts, because their purpose is to advertise the sale of real estate rather than to communicate information.

*Carr v. Forst*, 249 Va. 66, 70, 453 S.E.2d 274 (1995). The Court in *Carr* found that the tax commissioner had read into the statute a provision that the legislature did not intend. "More precisely, the Commissioner reads into the statute an element (i.e., the purpose of the publication) that is contrary to the statute's plain meaning." *Carr* at 71. "Had the General Assembly intended such an exclusion, it could have so provided." *Id.*

The Court in *Carr* examined many of the same issues present in the instant case, specifically the strict construction of tax exemptions in favor of the tax commissioner. "When a tax exemption is claimed, certain well-established principles of law must be considered. The Constitution of Virginia, in Article X, Section 6(f), provides that 'exemptions of property from taxation . . . shall be strictly construed.' Thus, 'taxation is the rule

and not the exception; and . . . statutory tax exemptions are strictly construed against the taxpayer, with doubts resolved against the exemptions'." *Carr v. Forst*, 249 Va. 66, 69, 453 S.E.2d 274 (1995) (citing *Commonwealth v. Research Analysis*, 214 Va. 161, 163, 198 S.E.2d 622, 624 (1973); accord *Roberts v. Board of Supervisors*, 249 Va. 2, 453 S.E.2d 258 (1995); *Westminster-Canterbury v. City of Virginia Beach*, 238 Va. 493, 501, 385 S.E.2d 561, 565 (1989)).

The tax commissioner in *Carr* also advanced another argument relied on in the instant case; that by statute, the tax commissioner has "the power to issue regulations relating to the interpretation and enforcement of the laws . . . governing taxes," according to Va. Code § 58.1-203(A), and any such regulation "shall be sustained unless unreasonable or plainly inconsistent with applicable provisions of law." Va. Code § 58.1-205(2). *Carr* at 69. The Commissioner in *Carr* also argued, as it does here, that the burden is on the taxpayer to show that the Commissioner's ruling is contrary to law. "Any assessment of a tax by the Department shall be deemed prima facie correct." Va. Code § 58.1-205(1). "Therefore, a presumption of validity attaches to the tax commissioner's ruling, and the burden is on the taxpayer to prove that the ruling is contrary to law or that the commissioner has abused his discretion and acted unreasonably." *Carr* at 69 (citing *Commonwealth v. Wellmore Coal*, 228 Va. 149, 153, 320 S.E.2d 509, 511 (1984)).

The Supreme Court in *Carr*, relying on the clear and unambiguous meaning of the statute, reversed the trial court and found the taxpayer exempt according to the terms of the statute. What this Court finds instructive in *Carr* is that the Court found that the tax commissioner read additional language into the statute. "Had the General Assembly intended such an exclusion, it could have so provided." *Carr* at 71.

Advancing many of the same arguments in the instant case, the Commissioner is again attempting to read language into the statute that simply does not appear. The language of the statute places the exemption on *what* is to be exempted and does not differentiate as to *who* may take the exemption. The Honorable William C. Mims asked this very question of the Attorney General, and received the AG Opinion of March 15, 2000, in response. That Opinion interpreted § 58.1-609.6 as applying to both "retail" and "wholesale" ISPs. In spite of knowledge that the Attorney General interpreted the code section to apply to both types of ISPs, the General Assembly has not amended the language of the statute.

When the Attorney General issues an opinion and the legislature fails to contradict the Attorney General's interpretation of a statute, it is

presumed that the legislature agrees or acquiesces to the Attorney General's interpretation. The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view. *See Board of Supervisors v. Marshall*, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975). In this case, the General Assembly is not just presumed to have had notice of the interpretation, but in fact originated the request for an interpretation.

Interestingly, the Department of Taxation itself advances the acquiescence argument in another taxation case; "the Department also argues that a long-standing and consistent published interpretation of a tax statute by the Tax Commissioner is "entitled to much greater weight because the legislature is presumed to be cognizant of the interpretation and to have acquiesced therein." *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 557, 554 S.E.2d 55 (2001). While the legislature may be presumed to have knowledge of the Tax Commissioner's published interpretations of a tax statute, there is no doubt that the legislature had notice of the Attorney General's Opinion of March 15, 2000, especially since the opinion responded to a direct question from a member of that body.

## Conclusion

Although the Rulings of the Tax Commissioner conflict with the Attorney General's opinion on the same issue, the Court finds that the plain language of the statute applies the exemption to the equipment, and does not include language that differentiates the eligibility of one type of ISP from another. The Commissioner offers no authority or reason that the General Assembly would give one type of ISP preferential treatment over another when purchasing and using the exact same piece of equipment. In 2000, the General Assembly asked for an interpretation of the statute with regard to the very issue present in the instant case and, in the face of an interpretation that allows both types of ISPs, has not amended § 58.1-609.6. The Commissioner's Plea in Bar is overruled.