# Richmond

T. H. Williams, et als. v. Commonwealth.

Travis DeLeon Triplette v. Commonwealth.

Travis DeLeon Triplette v. Commonwealth.

November 21, 1949.

Record Nos, 3565, 3566, 3567.

Present, All the Justices.

The opinion states the case.

*Stuart B. Campbell* and *George P. Young,* for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General,* and *H. T. Williams, Jr., Junior Attorney,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

On November 3, 1947, Travis DeLeon Triplette was arrested in Wythe county, Virginia, on a warrant charging him with the unlawful transportation of alcoholic beverages in excess of one gallon, in violation of Virginia Code, 1942 (Michie), section 4675 (49a) of "The Alcoholic Beverage Control Act of Virginia," and sections 42, 43 and 44 of the

Regulations of the Virginia Alcoholic Beverage Control Board. At the same time, a Ford truck, Motor No. 99 T-908159, bearing North Carolina license No. 892038, occupied or in the possession of Triplette, together with its cargo of 193 cases of whiskey, was seized in pursuance of Virginia Code, 1942 (Michie), section 4675 (38a).

Upon a hearing before the trial justice of Wythe county, Triplette was found guilty of illegally transporting the said whiskey and the whiskey was ordered to be confiscated. An information was filed in the Circuit Court of Wythe county, praying that the confiscated truck be condemned and sold and the proceeds thereof disposed of according to law. The information, together with appeals from the judgment of conviction of Triplette and the order of confiscation of the whiskey, were duly matured for hearing in the circuit court.

In the proceeding for the condemnation of the truck, T. H. Williams and Mrs. T. H. Williams, trading as Williams Motor Company of North Wilkesboro, North Carolina, filed an answer under oath asserting that they had a *"bona fide"* first lien on the truck on a "reservation of title contract" dated April 28th, 1947, whereby they "reserved title to the said motor vehicle until the full amount of the purchase price of $1,300 was paid;" that there was a balance of $600 due, plus interest, on said contract, evidenced by a promissory, negotiable bond of Triplette; that their contract with Triplette provided that in the event he failed to pay the balance of the purchase price, the vendors could retake possession of the truck, sell it, and apply the proceeds of the sale, so far as necessary, in payment of the balance due on said bond, with interest and costs; that their lien to secure the unpaid purchase money on the truck was recorded on the face of the certificate of title to the truck, issued by the State of North Carolina to Triplette; that they had perfected their lien against the said truck; and that an illegal use, if any, of the truck was without their connivance or consent, express or implied. They prayed that the truck be released

to them, or failing in this, that the court recognize and protect their lien to the extent of the amount ·due thereon.

The certificate of title to the truck was filed with the answer.

By agreement of the parties, the three proceedings, namely, the charge against Triplette, the information against the Ford truck, and the order for the forfeiture of the whiskey found in the said truck, all arising out of the same transaction and involving identical questions of fact and of law, except as hereinafter noted, were consolidated and tried together. All matters of law and fact were submitted to the trial court and heard without the intervention of a jury. The evidence presented was considered as if introduced in each separate case.

The defendants demurred to the evidence, and the Commonwealth joined in the demurrer. Upon consideration, the trial court found Triplette guilty of illegally transporting ardent spirits in excess of one gallon into and through Virginia, and fixed his punishment at a fine of $500 and ninety days in jail, the jail sentence being suspended. It condemned and ordered to be sold the Ford truck transporting the liquor and the proceeds from the sale forfeited to the Commonwealth, and ordered to be confiscated and forfeited to the Commonwealth the alcoholic beverages located on the truck.

The proceedings come before us, in consolidated form, upon three writs of error. The defendants contend that the trial court in overruling their demurrer to the evidence, and entering the above judgment and orders erred in taking judicial notice of the regulations of the Virginia Alcoholic Beverage Control Board, on the ground that it had not been shown that such regulations had been made, published and filed in such a manner as to become effective in Wythe county.

On behalf of the Commonwealth, the following undisputed evidence was introduced:

Triplette, when arrested, was operating a Ford truck loaded with 193 cases of whiskey, enroute from Cairo, Il-

linois, to North Wilkesboro, North Carolina, travelling on the direct route between the two points. He had in his possession documents showing that "125 cases of Calvert Reserve pints, 25 cases of Four Roses pints, 25 cases of Four Roses half-pints and 18 cases of Old Crow pints" had been purchased by Howard T. Church of North Wilkesboro, North Carolina, from J. B. Wenger, wholesale liquor dealer of Cairo, Illinois. All of the liquor bore Federal Internal Revenue stamps. Triplette had no permit from the Virginia Alcoholic Beverage Control Board to transport the liquor into, within or through Virginia, had not posted a bond for its transportation with that Board, and had no bill of lading or other memorandum of shipment describing the route to be travelled.

It was admitted that Howard T. Church, a resident of North Wilkesboro, North Carolina, had no right, under the laws of that State, to receive the shipment. It was conceded that the Federal stamps, which the liquor bore, were all that was necessary to make the sale to him legal in Illinois.

The defendants presented one witness, J. W. Hutton, Clerk of the Circuit Court of Wythe county. Mr. Hutton first testified that neither he nor his deputy clerk had been able to find any regulations of the Virginia A. B. C. Board filed in his office during the past nine or ten years, and that, to the best of his knowledge and belief, no such regulations were on file in his office. He was excused from the stand and later recalled. He then testified that, after a further search, he found on file in the safe in the clerk's office a book entitled "Alcoholic Beverage Acts and 3.2 Beer Law of Virginia, As Amended by The General Assembly 1942; Regulations and Administrative Orders Adopted By The Virginia Alcoholic Beverage Control Board." In addition to the above words, on the outside cover, there was printed, "Richmond: Division of Purchase and Printing 1943." Mr. Hutton further said that he did not know how or when the book got in the clerk's office, and that he did not find it certified in any way.

The book was introduced in evidence and filed as an exhibit. It contains 203 pages. Page 1 bears the title above, the same as on the cover of the book, and page 2 a table of contents. Pages 3 to 68 contain the provisions of "The Alcoholic Beverage Control Act." Virginia Code, 1942 (Michie), section 4675 (1) *et seq.* Pages 69 to 86 contain "The 3.2 Beer and Light Wine Act" and "Other Enactments of the General Assembly Relating to Alcoholic Beverages, etc." Pages 87 to 112 contain the "Regulations of Virginia Alcoholic Beverage Control Board," including regulations numbered 42, 43 and 44. Pages 113 to 167 contain the "Administrative Orders of the Virginia Alcoholic Beverage Control Board." On pages 128 and 129, is the following certificate (with the effective dates of sections of the regulations eliminated, as being immaterial here):

"COMMONWEALTH OF VIRGINIA
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL
VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD

City of Richmond, May 14, 1943.

"This is to certify that at a meeting of the Virginia Alcoholic Beverage Control Board, held this day at its offices in Richmond, Virginia, the publication styled as:

"ALCOHOLIC BEVERAGE ACTS
AND
3.2 BEER LAW OF VIRGINIA

As Amended by the General Assembly 1942

Regulations and Administrative Orders Adopted by the

VIRGINIA ALCOHOLIC BEVERAGE
CONTROL BOARD

was adopted by the Virginia Alcoholic Beverage Control Board as an officially printed copy of The Alcoholic Beverage Acts and 3.2 Beer Law of Virginia, and the Regulations

and Administrative Orders previously adopted by the Virginia Alcoholic Beverage Control Board; and

"To further certify that such Regulations of the Board as have the force and effect of law become effective on September 14, 1940, after adoption, in accordance with Section 5 of the Alcoholic Beverage Control Act, with the following exceptions, however, that the sections hereinafter enumerated became effective on the dates set opposite each section:

\* \* \* \* \*

"GIVEN UNDER MY HAND, this 14th day of May, 1943.
"VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD
"R. McC. Bullington, Chairman.

"Attest:

"John P. McLaughlin, Secretary."

The remaining pages are devoted to an "Index to the Alcoholic Beverage Control Law."

No evidence in support of the claim of the Williams Motor Company to a lien on the Ford truck was introduced, except the chattel mortgage and bond mentioned in the answer of claimants, and the certificate of title to the truck filed with their answer.

The certificate of title is similar in form to the type of certificate of title for motor vehicles authorized in Virginia. On its face, in a place provided for the entry of liens against the motor vehicle, a first lien in the amount of $1,200,— "C. S. C." dated "4/28/47, against the truck in favor of the Williams Motor Company," is set out.

It is conceded there was no proof that the alleged lien had been perfected by the registration of the chattel mortgage in North Carolina in accordance with the laws of that State (Vol. 2, General Statutes of North Carolina, 1943, .chap. 47, Art. 2, secs. 47-20, 47-23).

It is further conceded that there is no statutory provision

in North Carolina similar to section 4675 (38a) (i)*, Virginia Code, 1942 (Michie), providing the effect to be given to the endorsement of a lien on the certificate of title of a motor vehicle. There had been no recordation of the claimants' lien in Virginia.

"The Alcoholic Beverage Control Act" of Virginia contains a comprehensive scheme for the control of the trade and transportation of alcoholic beverages within the Commonwealth. By the Act an A. B. C. Board is established and authorized to adopt such regulations "as it may deem necessary" to confine the transportation of liquor "to legitimate purposes." Virginia Code, 1942 (Michie), section 4675 (49a).

In accordance therewith, the A. B. C. Board of Virginia has promulgated regulations applicable to such transportation by requiring that: (1) The vehicle must use the most direct route and carry a bill of lading showing the route it will travel;[1] (2) The carrier must post a bond in the penal sum of $1,000, conditioned on lawful transportation;[2] (3) The bill of lading must show the name of the true consignee, and that consignee must have a legal right to receive the beverages at the stated destination.[3]

That Virginia may, in order to protect herself from illicit liquor traffic within her borders, subject the transportation of liquor in and through the Commonwealth to regu-

---

*"If any such claimant be a lienor, and if it shall appear to the satisfaction of the court that the owner of the conveyance or vehicle has perfected his title to the conveyance or vehicle if it be a motor vehicle, prior to its seizure, or within ten days from the time same was acquired, and that such lienor was ignorant of the fact that such conveyance or vehicle was being used for illegal purposes, when it was so seized, that such illegal use was without such lienor's connivance or consent, express or implied, and that he held a *bona fide* lien on said property and had perfected the same in the manner prescribed by law, prior to such seizure (*if such conveyance or vehicle be an automobile the memorandum of lien on the certificate of title issued by the Director of the Division of Motor Vehicles on said automobile shall make any other recordation of same unnecessary*), * * * " (Italics added).

[1] Section 44 (a), Regulations of the Virginia A. B. C. Board.
[2] Section 42, Regulations of the Virginia A. B. C. Board.
[3] Section 44 (c), Regulations of the Virginia A. B. C. Board.

lations promulgated by the Virginia A. B. C. Board is definitely settled. That the above regulations regarding the transportation of liquor are not invalid is likewise settled. Carter v. Commonwealth, 321 U. S. 131, 64 S. Ct. 464, 88 L. ed. 605, affirming Carter v. Commonwealth, 181 Va. 306, 24 S. E. (2d) 569; and Dickinson v. Commonwealth, 181 Va. 313, 24 S. E. (2d) 550.

A determination of the question whether the trial court was justified in taking judicial notice of the regulations of the A. B. C. Board involves an interpretation of Virginia Code, 1942 (Michie), section 4675 (5), Acts 1934, page 105, Acts 1936, page 419.

Virginia Code, 1936 (Michie), section 4675 (5), as originally enacted in 1934, reads as follows:

"Section 5. Power to make regulations; how published effect thereof.—(a) The Board may from time to time make such regulations not inconsistent with this act as the Board shall deem necessary for carrying out the provisions of this act, and from time to time alter, repeal, or amend such regulations or any of them. Such regulations shall be published at least once in some newspaper published in the city of Richmond and in any other manner which the Board may deem advisable, and upon being so published shall have the force and effect of law.

"(b) Nothing in this act contained shall require such regulations to be uniform in their application.

"(c) Prima facie evidence of any such regulation may be given in all courts and proceedings by the production of what purports to be an officially printed copy of such regulation, alteration, repeal or amendment."

The section was amended in 1936, Acts 1936, page 419, by adding the following words to subsection (a):

"The board shall certify to the clerks of all circuit courts and city courts of record having criminal jurisdiction copies of all regulations adopted by the board; such clerks shall keep on file for public inspection all such regulations certified to them by the board."

At the same time, Acts 1936, page 419, subsection (c) was rewritten, and now appears as follows:

"Justices and courts shall take judicial notice of the regulations of the board made, published and filed in accordance with the provisions of this act."

The defendants, relying upon *O'Brien* v. *Commonwealth*, 165 Va. 870, 183 S. E. 228, insist that the amendment of 1936 did not relieve the Commonwealth of the burden of showing that the regulations of the Board had been "made, published and filed," in accordance with the provisions of the statute, before judicial notice could be taken of them. They contend there was no proof that the regulations had been made and published by the Board or that they had been certified to the clerk of the circuit court of Wythe county, and that, consequently, they did not become effective in that county.

The case of *O'Brien* v. *Commonwealth, supra,* was tried prior to the time that the 1936 amendment became effective. In that case, O'Brien was convicted of the possession of alcoholic beverages not bearing certain stamps, in violation of Virginia Code, Supp. 1934 (Michie), section 4675 (50), Acts 1934, page 100. Upon his trial, no evidence of any character was introduced that the A. B. C. Board has promulgated any rule or regulation concerning the fixing of official stamps to bottles containing liquor, and there was no evidence as to what kind of stamps the Board had adopted to signify the fact that the liquor contained in any bottle having the stamp was legal liquor. (165 Va. 872). Code Supp. 1934 (Michie), section 4675 (5) (c) did not require the court to take judicial notice of the regulations of the Board.

On appeal, the Attorney General sought to show in his brief that the Board had adopted an order, not introduced in evidence in the lower court, requiring certain official stamps to be fixed to containers of liquor being transported. It was held that, in the absence of evidence, the court could not assume that the Board had adopted a particular regulation relating to official stamps. Said the court: "The statute

itself provides how regulations adopted by the board may be approved, and manifestly contemplates that at least the *prima facie* evidence therein mentioned shall be produced." (165 Va. 874).

The factual situation in the present case is not only wholly different from the facts in the cited case; but the amendment of the statute involved, prompted perhaps by the decision in that case, presents a difference in the applicable law of the two cases. In the *O'Brien Case*, the record failed to show that any regulation had been adopted by the Board. No copy of regulations of the Board was offered in evidence upon the trial. Here the regulations of the Board were introduced in evidence, and the question is as to the validity and effect which should have been given to them in the form offered. There the production of what purported to be an officially printed copy of the regulations of the Board would have constituted *prima facie* evidence of the adoption of such regulations by the Board. Here the court was required to take judicial notice of the regulations of the Board made, published and filed in accordance with the enabling act.

Judicial notice is a short cut to avoid the necessity for the formal introduction of evidence in certain cases where there is no need for such evidence. It is a rule of necessity and public policy in the expedition of trials. It relieves the party from offering evidence because the matter is one which the judge either knows or can easily discover. 31 C. J. S., Evidence, page 509, *et seq.*; 20 Am. Jur., Evidence, page 46, *et seq.*; Vol. 23, Perm. Ed. Words & Phrases, page 294.

Some courts hold that when a matter is in the domain of judicial notice, it is outside the domain of dispute by evidence. *Beardsley* v. *Irving*, 81 Conn. 490, 491, 71 A. 580, 581. Other courts hold that it is but a rule of evidence, and like many presumptions entertained by the court, "if the question is a disputable one, or can be disputed, evidence so disputing it is competent and should be admitted." *Timson*

v. *Manufacturers Coal, etc., Co.*, 220 Mo. 580, 589, 119 S. W. 565, 569; *People* v. *Mayes*, 113 Cal. 618, 45 P. 860.

■ In Wigmore, Evidence, 3rd Ed., 1946, section 2567, it is said "That a matter is judicially noted means merely that it is taken as true without the offering of evidence by the party who should ordinarily have done so. * * * But the *opponent is not prevented from disputing* the matter, if he believes it disputable."

See critical review of Judicial Notice by Prof. Edmund M. Morgan of Harvard Law School, Vol. 57, Harvard Law Review, page 269, January, 1944.

The evidence in this case shows that the book which contained the regulations of the A. B. C. Board also included a certificate at the end of the regulations signed in the name of "The Virginia Alcoholic Beverage Control Board," by its chairman and attested by its secretary. It certifies that the Regulations of the Board, including those involved in this proceeding, "became effective on September 14, 1940, after adoption in accordance with section 5 of the Alcoholic Beverage Control Act," that is, section 4675 (5).

The book had been officially printed by a State agency, "Division of Purchase and Printing." The certificate was in due form and the authority for the printed signatures of the certifying and attesting officers of the Board is unquestioned.

■ The recitation of the certificate, that the requirements of Code, section 4675 (5) have been complied with, covers the making and publishing of the regulations and due certification thereof to the clerks of all circuit courts and city courts of record having criminal jurisdiction in the Commonwealth, including Wythe county. The fact that the regulations so certified were found in the clerk's office furnishes further proof of full compliance by the Board. The fact that the clerk was unaware that the book was in his office, and did not know how it got there is immaterial under the circumstances. His failure to keep them on file for public inspection did not affect their validity. When the

Board complied with its duty, the regulations became fully effective.

■ The manifest purpose of Code, section 4675 (5) (c), as amended in 1936, was to do away with the necessity of the Commonwealth introducing evidence to show due adoption of the regulations of the A. B. C. Board. By express statute, the courts are required to take such notice of the regulations of the Board as is taken of general statutory laws. To require the Commonwealth to prove that the regulations were made, published and filed according to law before judicial notice could be taken of them would negative the purpose and effect of the statute. When such proof is made there is no need to apply the rule of judicial notice. The statute must have meant something or it would not have been enacted. We must assume that the legislature did not intend to do a vain and useless thing.

■ There is no merit in the contention of the lien claimants. They failed to register or record their chattel mortgage in accordance with statutory requirements, as the trial judge correctly held. We cannot hold the recordation provisions of Virginia Code, section 4675 (38a) (i), relating to the effect of an endorsement of a lien on a certificate of title issued to an automobile, effective as a statute of recordation in the State of North Carolina.

Moreover, the claimants produced no evidence to satisfy the court, in compliance with Code, section 4675 (38a) (i), that they were ignorant of the fact that the Ford truck in question was being used for illegal purposes, and when seized that its illegal use was without their connivance or consent, express or implied.

We find no error in the judgment and orders of the trial court. For the reasons stated, each of them is affirmed.

*Affirmed.*