Present: All the Justices

CHESAPEAKE HOSPITAL AUTHORITY, D/B/A
CHESAPEAKE GENERAL HOSPITAL

v.  Record No. 002813

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TAXATION

OPINION BY
CHIEF JUSTICE HARRY L. CARRICO
November 2, 2001

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TAXATION

v. Record No. 002820

CHESAPEAKE HOSPITAL AUTHORITY, D/B/A
CHESAPEAKE GENERAL HOSPITAL

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick H. Creekmore, Judge

On April 3, 1997, the Commonwealth of Virginia, Department

of Taxation (the Department) issued a notice of assessment to

Chesapeake Hospital Authority, d/b/a Chesapeake General Hospital

(the Hospital), for use tax on the cost of certain food prepared

and served by the Hospital during the assessment period

beginning December 1, 1993, and ending November 30, 1996.  The

Hospital filed an administrative application for correction of

erroneous assessment with the Tax Commissioner pursuant to Code

§ 58.1-1821.  On May 19, 1998, the Tax Commissioner issued a

determination letter upholding the assessment.  The Hospital

paid the assessment under protest and filed an application in

the trial court for correction of the assessment pursuant to Code § 58.1-1825.

The trial court held the assessment was erroneous and, in a final order entered August 30, 2000, awarded the Hospital judgment for $28,487.98, representing the amount of the erroneous tax plus interest collected for the assessment period. We awarded the Department this appeal.

In Record No. 002820, the Department seeks reversal of the trial court's award of judgment to the Hospital. In Record No. 002813, the Hospital seeks a ruling that the trial court erred in refusing to hold that interest on the judgment should be compounded daily. Finding that the trial court did not err in either respect, we will affirm its judgment.

The record shows that the Hospital's dietary department purchases raw food and ingredients, and the Department agrees there is "no taxation" on these purchases. The dietary department prepares meals and serves them to patients, and the Department concedes the furnishing of meals to patients is exempt from sales and use tax. The dietary department operates a cafeteria and a catering service and collects sales tax on the food sold to physicians, employees, and others.

The dietary department also prepares food and serves it free of charge, without collecting sales tax, at meetings of members of the medical staff, the Process Improvement Committee,

2

and the Hospital Authority, as well as at annual banquets recognizing volunteers.  In these situations, the Hospital uses an accounting entry called "dietary transfers" to record the value of the food transferred to the different departments of the hospital, and it was upon these dietary transfers that the Department based its assessment of April 3, 1997.

The assessment was imposed pursuant to Code § 58.1-604, which provides in pertinent part that "[t]here is hereby levied and imposed in addition to all other taxes and fees now imposed by law, a tax upon the use or consumption of tangible personal property in this Commonwealth."  The use tax imposed by Code § 58.1-604 "applies to the use, consumption or storage of tangible personal property in Virginia when the Virginia sales or use tax is not paid at the time the property is purchased." 23 VAC 10-210-6030.

The Department and the Hospital join issue on whether the latter's "claims derive from similar statutory language exempting from taxation 'tangible personal property for use or consumption by' a political subdivision (Va. Code § 58.1-609.1(4)) or a nonprofit hospital (Va. Code § 58.1-609.7(4))."[1]

_____

[1] Classifying itself as a "food service operator," the Hospital also claims it is entitled to an exemption for food that restaurants and food service operators furnish to employees. Code § 58.1-609.3(7); 23 VAC 10-210-930(C).  However, the Code section limits the exemption to "[m]eals furnished by restaurants or food service operators to employees as a part of

3

The Department agrees that food is tangible personal property within the meaning of both the statute imposing the tax and the statutes providing the exemptions. The Department also agrees that the Authority is a political subdivision of the Commonwealth, created by the General Assembly "to provide improved medical care and related services" to "the residents of the City of Chesapeake and such other persons who might be served by the Authority." 1966 Va. Acts ch. 271 as amended by 1987 Va. Acts ch. 396. Finally, the Department agrees that the Hospital provides its services on a nonprofit basis and is exempt from federal and state income tax.

In its first assignment of error, the Department asserts that "[t]he Circuit Court erred by failing to give the Department's rulings and policy proper deference by ignoring the Department's long-standing administrative interpretation."[2] The

---

wages." (Emphasis added.) There is no showing that the food the Hospital furnished free to its employees was a part of wages.

[2] Under this assignment of error, the Department argues on brief that the trial court erred in failing to give the actions of the Tax Commissioner proper deference by ignoring a 1997 amendment to Code § 58.1-609.4(2), related to an exemption in favor of colleges and other institutions of learning. As amended, the Code section grants an exemption from sales or use tax for "[t]angible personal property for use or consumption by a college or other institution of learning, *including food purchased for free distribution at the facilities of the college or other institution of learning."* (Italics added to show new language.) The Department argues that "without the inclusion of similar language in the hundreds of other statutory exemptions that exempt 'tangible personal property for use or consumption

4

Department argues that, to provide the proper deference, the trial court should have given "great weight" to the published rulings of the Tax Commissioner on questions similar to the issue presented here.[3]  Throughout its opening brief, the Department repeatedly asserts that the actions of the Tax Commissioner are entitled to a heightened level of deference, resulting in judgment in the Department's favor.

---

by [an exempt entity]' the General Assembly has acquiesced in the restrictive interpretation applied to them by the Tax Commissioner."  While it is doubtful the Department properly preserved this argument below, there is no doubt the Department's assignment of error is inadequate to encompass the argument.  "The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points."  Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851, 853 (1953).  No one reading the Department's first assignment of error could possibly know to respond to an argument related, not to the deference allegedly due the actions of the Tax Commissioner, but to the non-action of the General Assembly, requiring an examination of "hundreds of other statutory exemptions."  Rule 5:17(c).

[3] The Department also argues that a long-standing and consistent published interpretation of a tax statute by the Tax Commissioner is "entitled to much greater weight because the legislature is presumed to be cognizant of the interpretation and to have acquiesced therein."  The difficulty with this argument is that the Tax Commissioner has not been consistent in his rulings on questions similar to the issue presented here, and the Department concedes as much.  In response to the Hospital's citation of the Tax Commissioner's inconsistencies, the Department states that "[t]o the extent that these citations are intended to show conflicting or confusing holdings, they attack the persuasiveness of the published rulings, not the fact that the Tax Commissioner has made a policy, published the policy, and vigorously enforced that policy for many years."

The Department emphasizes one of the Tax Commissioner's published rulings, P.D. 95-70 (April 3, 1995).[4] In this ruling, the Tax Commissioner denied a hospital an exemption for "[i]nternal accounting charges for catered meals provided by the hospital's food service division to various hospital departments for staff meetings, board meetings, [and] technical and educational meetings . . . because the hospital exercises no control over the consumption of such meals." Further, in P.D. 95-70 and in his determination letter upholding the assessment in this case, the Tax Commissioner relied "heavily" on an opinion of the Attorney General of Virginia which, according to the determination letter, stated that "catered meals purchased by the state with public funds and consumed by guests attending a conference hosted by the state [did not] warrant exemption." Citing 1969-1970 Att'y Gen.Ann.Rep. 291.[5]

Responding, the Hospital points out that "[o]n July 1, 1980, § 58.1-205 became effective and codified the effects of regulations, rulings, and administrative interpretations of the Tax Department." The Code section provides as follows:

---

[4] Although P.D. 95-70 was not published until April 3, 1995, the Department seeks to use it retroactively to uphold the assessment against the Hospital for the 1993 use tax the Hospital claims is erroneous.

[5] The relevance of P.D. 95-70 and the Attorney General's opinion is questionable. Both relate to "catered meals," which are not involved in this case. Here, the Hospital purchases raw

6

In any proceeding relating to the interpretation or enforcement of the tax laws of this Commonwealth, the following rules shall apply:

1. Any assessment of a tax by the Department shall be deemed prima facie correct.

2. Any regulation promulgated as provided by subsection B of § 58.1-203 shall be sustained unless unreasonable or plainly inconsistent with applicable provisions of law.[6]

3. Rulings issued in conformity with § 58.1-203 and published as provided in § 58.1-204 shall be accorded judicial notice.[7]

4. In any proceeding commenced under §§ 58.1-1821, 58.1-1824 or 58.1-1825 before January 1, 1985, unpublished rulings and other administrative interpretations which are documented and established by competent evidence to have been in effect prior to July 1, 1980, shall be accorded judicial notice and shall be given such weight as the reviewing authority deems appropriate. In all proceedings commenced after such date, such rulings and interpretations shall be subject to the provisions of subsection 5.[8]

5. Rulings and administrative interpretations other than those described in subsections 2, 3 and 4 shall not be admitted into evidence and shall be accorded no weight, except that an assessment made pursuant to any such ruling or interpretation shall be entitled to the presumption of correctness specified in subsection 1.

---

food and ingredients and uses them in preparing and serving the meals involved in the dietary transfers.

[6] Subsection B of Code § 58.1-203 provides in pertinent part that "notice of a proposed regulation shall appear at least sixty days in advance of the date prescribed for submittals."

[7] Code § 58.1-204(4) provides that the Department shall publish "[a]ny written ruling or other interpretation of Virginia law which the Tax Commissioner believes may be of interest to taxpayers and practitioners."

[8] Code § 58.1-1821 applies to "Application to Tax Commissioner for correction," § 58.1-1824 applies to "Protective claim for refund," and § 58.1-1825 applies to "Application to court for correction of erroneous or improper assessment of state taxes generally."

The Hospital says "[t]his statute does not afford the Tax Commissioner's rulings great weight."

The Department's reply brief consists of a set of confusing statements of the Department's position concerning the effect of the enactment of Code § 58.1-205. The Department says on the one hand that Code § 58.1-205 "is silent about the weight to be given published rulings" and that the "rulings are not cited as persuasive authority." On the other hand, the Department states that "[t]he Court must analyze the published rulings to determine the appropriate weight in the same manner as before the enactment of § 58.1-205," meaning, of course, to give the rulings "great weight," as we did before 1980. See Virginia Dept. of Taxation v. Progressive Community Club, Inc., 215 Va. 732, 739, 213 S.E.2d 759, 763 (1975) (construction of statute by state official charged with its administration entitled to great weight).

Further, the Department says that the statute is also silent "as to the weight to be given a policy published in anything other than a regulation." Even so, the Department says that "the court determines the appropriate weight based on principles developed and applied over the years," meaning, again, to give the policies pre-Code § 58.1-205 "great weight."

Finally, the Department states that "an unpublished policy is inadmissible and entitled to no weight."  The Department immediately turns around and says that upon the review of an "assessment based on an unpublished policy . . . the views of the Tax Commissioner are entitled to great weight."

It is true, as the Department points out, that since Code § 58.1-205 was adopted in 1980, this Court has in four cases cited the "great weight" level of deference allegedly due the actions of the Tax Commissioner.  Virginia Dept. of Taxation v. Blanks Oil Co., 255 Va. 242, 244, 498 S.E.2d 914, 915 (1998), involved a regulation issued by the Tax Commissioner, and the parties to this controversy agree such a regulation is entitled to great weight.  Carr v. Forst, 249 Va. 66, 69, 453 S.E.2d 274, 276 (1995), and Virginia Dept. of Taxation v. Delta Air Lines, Inc., 257 Va. 419, 426, 513 S.E.2d 130, 133 (1999), involved published rulings.  City of Winchester v. American Woodmark Corp., 250 Va. 451, 458, 464 S.E.2d 148, 152 (1995), merely noted that the Tax Commissioner, "[s]ince 1950, . . . has opined" a certain way concerning the meaning of the phrase "machinery and tools."  Id.

However, in none of these cases was the issue of the effect of the enactment of Code § 58.1-205 raised, discussed, or decided.  Hence, the principles of stare decisis do not foreclose inquiry into the issue of the Code section's effect

9

upon the level of deference due the actions of the Tax Commissioner; the question remains open.

We deal here with an assessment. Under any reading of Code § 58.1-205, an assessment is entitled to a presumption of correctness, and nothing more. What the Department would have us say is that an assessment, which under Code § 58.1-205 is entitled to no weight other than a presumption of correctness, gains great weight simply because it is based upon prior rulings and policies that are, in the Tax Commissioner's view, entitled to great weight. This is bootstrapping, indeed, and the Department's attempt to have the elevated level of deference applied to an assessment must fail in light of the fact that, under Code § 58.1-205, the Tax Commissioner's prior rulings and policies themselves are not entitled to great weight, unless expressed in regulations.

In its second assignment of error, the Department states that "[t]he Circuit Court erred by failing to strictly construe the tax exemption for government use and for medical-related use." In a letter opinion, the trial court did not state whether it construed the exemptions strictly or liberally. However, the Department is correct in stating that an exemption from taxation must be strictly construed, Forst v. Rockingham Poultry Mktg. Coop., 222 Va. 270, 276, 279 S.E.2d 400, 403

(1981), and we shall strictly construe the "government use" and "medical-related use" exemptions in deciding this case.

In its third assignment of error, the Department maintains that "[t]he Circuit Court erred by failing to hold the Assessment in this case to be prima facie correct and to place the burden of proof of Assessment error upon the . . . Hospital." This assignment of error is meritless; counsel for the Department must not have read the trial court's letter opinion.

In that opinion, the trial court stated as follows:

[T]he holdings of the Tax Commissioner are to be viewed as "prima facie correct." Virginia Dept. of Taxation v. Blanks Oil, 255 Va. 242 (1998). A presumption of validity therefore attaches to the Commissioner's ruling, and the burden is on the taxpayer to prove the ruling is contrary to law or that the Commissioner abused his discretion and acted unreasonably. Commonwealth v. Wellmore Coal, 228 Va. 149 (1984). Plainly, a Court should not overturn the Commissioner's decision unless the assessment is contrary to law, was a[n] abuse of discretion, or was the product of arbitrary, capricious, or unreasonable behavior. Virginia Dept. of Taxation v. Lucky Stores, 217 Va. 121 (1976).

Naturally, we take the trial court at its word and hold that it touched all the bases this assignment of error claims it missed.

Giving the assessment in question a presumption of correctness and applying a rule of strict construction to the exemptions the Hospital claims, we turn now to the question whether the Hospital is entitled to the exemptions. The

11

Department contends the Hospital is entitled to neither of the exemptions.

The Department claims there is ambiguity created by the interplay between the statute imposing the use tax, Code § 58.1-604, and the statutes granting the exemptions, Code § 58.1-609.1(4) (political subdivisions) and Code § 58.1-609.7(4) (nonprofit hospitals).  The Department points out that the tax is imposed upon "the use or consumption of tangible personal property *in* this Commonwealth" while the exemptions apply to the "use or consumption [of tangible personal property] *by* [a political subdivision or a nonprofit hospital]."

Use of the word "by" in the statute suggests alternative meanings, the Department submits, including "in consequence of" and "[t]hrough the means, act, agency or instrumentality of." Black's Law Dictionary 201 (6th ed. 1990).  This, in turn, the Department says, "suggests that a use 'by' a hospital must not only be through the act of an agent of the hospital but also in consequence of the nature of a hospital."  The Department then opines that "[i]ncorporating a consequential meaning into the word [']by['] leads to consideration of how the consumption [of food] relates to the purpose of the hospital and the rendition of medical services."

These circumstances, the Department says, necessitate resort to the Tax Commissioner's expertise to determine what

12

meaning the General Assembly intended in its use of the word "by." The Department points out that, in his determination letter upholding the assessment in this case, the Tax Commissioner stated a hospital is not entitled to exemption from taxation on food unless that food is consumed "in connection with the [provision of the] hospital's medical services [to its patients]," a connection the Department asserts "is derived from the statutory requirement that exempt tangible personal property be used or consumed by the [Hospital]."

We disagree with the Department. We find no ambiguity in the language of the statutes involved in this case. The General Assembly obviously used the word "by" in the exemption statutes rather than the word "in" as a matter of good grammar and common sense. As the Hospital points out, for the General Assembly to have used the word "in" rather than "by" in the exemption statutes would have produced an absurdity: all the property made subject to taxation under the imposition statute would have been excluded immediately under the exemption statutes when the plain intent was to exclude only property used or consumed by a political subdivision or a nonprofit hospital.

In the absence of an ambiguity in the statutes, there is no room for interpretation. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). And since there is no room for interpretation, there is no foundation for the requirement the

13

Tax Commissioner added when he wrote in his determination letter in this case that, to qualify for the political subdivision and nonprofit hospital exemptions, food must be used or consumed by a hospital in connection with the provision of its medical services to its patients. Indeed, to add the requirement constitutes amending the exemption statutes, and neither the Tax Commissioner nor this Court may take that action. See Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 349 (2001).

Furthermore, we think the Hospital satisfied the requirement that the food be "used or consumed" by exempt entities. It should be noted that this requirement is in the disjunctive, used or consumed.[9] Code § 58.1-602 states that " '[u]se' means the exercise of any right or power over tangible personal property incident to the ownership thereof." The Hospital certainly owned the food in question; it purchased the food with its own funds. And one of the rights or powers it could exercise incident to its ownership was to decide what

---

[9] It should also be noted that the phrase "use or consumption" appears in both the statute imposing the tax and the statutes providing the exemptions. The Department states that, viewed in isolation, this use of the same terms "might suggest that the exemption is coextensive with the imposition." We think the suggestion is a strong one, indeed, bearing in mind, of course, that the exemptions do not exclude all use or consumption of personal property, only, as in this case, use or consumption by selected entities.

14

disposition should be made of the food, i.e., to whom it should be served and what, if any, charge would be made therefor.

Unlike the situation involving the catered food denied exemption by the Tax Commissioner in P.D. 95-70, the Hospital here purchased the food raw and prepared it before serving it at meetings of the medical staff, the Process Improvement Committee, and the Hospital Authority, as well as at annual banquets recognizing volunteers. The Hospital exercised the necessary degree of control over the food until the very moment it was consumed by the chosen recipients, thus using the food in the sense contemplated by the exemption statutes.

But, even if it were necessary to determine whether the Hospital had consumed the food in the sense contemplated by the exemption statutes, the result would be the same, as published rulings of the Tax Commissioner affirm. For example, in P.D. 85-202 (October 28, 1985), the taxpayer, a for-profit hospital, contracted with an independent contractor for operation of its food service facilities. The contractor procured the food and supervised its preparation and serving to the Hospital's "staff, employees, visitors, etc.," to some of whom the food was furnished free and to others at a price set by the Hospital. Title to the food vested in the hospital. The contractor was reimbursed for the food it purchased and also was paid a weekly management fee. The Tax Commissioner allowed the hospital a

15

resale exemption for the food that was sold but denied such an exemption for food furnished "for the Taxpayer's own use," including "meals served to patients, 'free' meals provided to visitors, and food furnished to the Taxpayer for special functions." In such instances, the Commissioner stated, the hospital "as <u>the ultimate consumer</u> of the food must remit the tax." (Emphasis added.)[10] <u>See</u> <u>also</u> P.D. 85-216 (December 9, 1985) and P.D. 97-152 (March 28, 1997).

But, the Department argues, the food ultimately was used or consumed "by someone other than the Hospital, e.g., employees, physicians with staff privileges, members of the Authority, and volunteers," and this does not constitute use or consumption by the Hospital. Accordingly, the Department concludes, the ultimate use or consumption of the food was properly taxed.

Again, we disagree with the Department. It should not be necessary to say that the Hospital, being an artificial entity, cannot use or consume the food in the sense of eating it itself. But the Hospital can act through natural persons and, in such manner, use or consume the food in the sense contemplated by the exemption statutes, <u>i.e.</u>, "in the performance of its service as

---

[10] In the Brief *Amicus Curiae* filed in the present case, this comment is made: "What is most remarkable about this ruling is that, when necessary to collect a tax from a for-profit hospital, the Commissioner concluded that the hospital was the user and consumer of food under the very circumstances

16

a hospital [and] its service to patients," Virginia Dept. of Taxation v. Bluefield Sanitarium, 216 Va. 686, 689, 222 S.E.2d 526, 528 (1976), or, as the Department itself puts the proposition on brief, "in furtherance of the purpose for which the General Assembly granted the exemption."

On this point, the Department singles out the Hospital's volunteers for special disparagement, arguing as follows: "[T]he evidence clearly showed that the annual volunteer banquet was not patient-care oriented, but given as a reward to encourage volunteers.  Volunteers do not provide medical services."

And, with respect to the dietary transfers as they related to employees, physicians with staff privileges, and members of the Hospital Authority, the Department has this to say: "No medical services were provided at the meetings where the meals were consumed.  Some of the meetings were described as 'patient-care oriented.'  Under the concept of strict construction, discussing patient care is not the equivalent of rendering medical services."

However, the trial court made these specific factual findings concerning employees, physicians with staff privileges, members of the Hospital Authority, and volunteers:

> The dietary transfers are provided to functions that are essential to the Hospital's ability to carry out its

---

that he argues that Chesapeake General Hospital is not the user and consumer."

17

primary mission of providing quality health care. For instance, . . . meals are provided to volunteers who are actively donating their time in a function directly involved with promoting health care. Feeding volunteers who are working uncompensated to assist patients is an act calculated to promote health care. Further example, feeding Hospital Authority members, who are meeting to discuss and conduct Hospital business, is further calculated to promote health care.

The Court finds that indeed the dietary transfers at issue are the type that are made directly related to the primary issue of the Hospital's main purpose. The Court believes the evidence and the record do indeed support that the dietary transfers provided to entities such as physicians on duty, volunteers at selected functions, and Hospital Authority members are provided with the intent, and the result, to promote the better efficiency of those groups promoting health. The Court further finds that such groups do indeed provide a significant function in providing health care.

The Department has not assigned error to any of these factual findings of the trial court. Accordingly, they are binding upon this Court and conclusive of the issue whether the Hospital's use or consumption of the food qualified the dietary transfers for exemption from the use tax.

As noted previously, the trial court stated in its letter opinion that "a Court should not overturn the [Tax] Commissioner's decision unless the assessment is contrary to law, was a[n] abuse of discretion, or was the product of arbitrary, capricious, or unreasonable behavior." The trial court found that the Hospital was exempt from use tax as a matter of law, and we agree. Hence, the assessment in question

18

was "contrary to law" and properly overturned by the trial court.

Remaining is the question raised by the Hospital concerning the trial court's refusal to hold that interest on the judgment awarded the Hospital should be compounded daily. In its final order, the trial court awarded the Hospital interest "as provided by Virginia Code § 58.1-15 and § 58.1-1833."

Code § 58.1-1833 provides that interest shall be allowed on money improperly collected from and refunded to a taxpayer at a rate equal to the rate established pursuant to Code § 58.1-15. Code § 58.1-15 provides that interest on refunds shall be computed at the rate equal to the rate established pursuant to § 6621 of the Internal Revenue Code. Section 6621 of the Internal Revenue Code provides the method for calculating the actual interest rate to be applied by taking the federal short-term rate plus percentage points. All these statutory provisions deal with rates of interest, not the compounding of interest.

Section 6622 of the Internal Revenue Code does provide for the compounding of interest daily, and the Hospital says that since "the Virginia Code defers to the Internal Revenue Code for the computation of interest, § 6622 necessarily applies and the compounding of interest on a daily basis is required." We disagree. Section 6622 of the Internal Revenue Code is not

referenced in Va. Code § 58.1-15, Va. Code § 58.1-1833, or Internal Revenue Code § 6621.  To adopt the Hospital's position would require amending Va. Code § 58.1-15 with the addition of the following italicized language, making it provide that interest on refunds shall be computed at the rate equal to the rate established pursuant to § 6621 of the Internal Revenue Code *and compounded daily pursuant to § 6622 of the Internal Revenue Code*.  As indicated *supra*, this Court is not at liberty to amend Code sections.  See *Shelor Motor Co. v. Miller*, 261 Va. at 479, 544 S.E.2d at 349.

Finding no error, we will affirm the judgment of the trial court.

*Affirmed*.