## CIRCUIT COURT OF THE CITY OF ROANOKE

City of Roanoke

v.

Moody Graphic
Color Service, Inc.

February 8, 2006

Case No. CL98-279

BY JUDGE CHARLES N. DORSEY

This matter is before the Court on motions for summary judgment. As the parties agreed that the matter may be resolved on summary judgment, the defendant was permitted to make a verbal motion for summary judgment. The facts are stipulated and the parties concede that there are no material facts at issue and the matter can be concluded by the ruling of the Court. For the reasons stated, the motion of the defendant for summary judgment is granted.

*Facts*

The defendant, Moody Graphic Color Service, Inc. ("Moody"), is engaged in the business of creating and selling specialized printing, products for printing, and pre-press components within the City of Roanoke. Moody essentially takes an image provided to it, such as a photograph or transparency, and breaks the image down into the four colors used by printers: cyan, magenta, yellow, and black. Using computers, Moody digitally alters and modifies the images to meet customer specifications. Such modification includes, among other issues, changing position, shade, or color of an image. By this process, the subject of the original image may be changed to a different image with a different background.

166

The City of Roanoke ("City") claims that Moody has improperly failed to pay the applicable business, professional, and occupational ("BPOL") tax for the 1996 and 1997 calendar years. Conceding it has not paid the BPOL tax, Moody argues it is a manufacturer within the meaning of Virginia Code § 58.1-3703(C)(4) and consequently exempt from levy of the BPOL tax. The Commonwealth of Virginia has found Moody to be a manufacturer for the purpose of exempting it from sales tax liability.

*Issue*

Is Moody a manufacturer within the meaning of Va. Code § 58.1-3703(C)(4), exempting it from the BPOL tax?

*Analysis*

The City accurately states prevailing law of the Supreme Court of Virginia pertaining to the manufacturing exemption from the BPOL tax. The exemption from the BPOL tax at issue is contained in Virginia Code § 58.1-3703(C)(4).

In pertinent part said statute provides:

§ 58.1-3703. *Counties, cities, and towns may impose local license taxes and fees; limitation of authority*. A. The governing body of any county, city, or town may charge a fee for issuing a license in an amount not to exceed $100 for any locality with a population greater than 50,000. . . . Such governing body may levy and provide for the assessment and collection of county, city, or town license taxes on businesses, trades, professions, occupations, and callings and upon the persons, firms, and corporations engaged therein within the county, city, or town subject to the limitations in (i) subsection C and (ii) subsection A of § 58.1-3706, provided such tax shall not be assessed and collected on any amount of gross receipts of each business upon which a license fee is charged. Any county, city, or town with a population greater than 50,000 shall reduce the fee to an amount not to exceed $50 by January 1, 2000. The ordinance imposing such license fees and levying such license taxes shall include the provisions of § 58.1-3703.1. . . .

C. No county, city, or town shall impose a license fee or levy any license tax. . . .
 4. On a manufacturer for the privilege of manufacturing and selling goods, wares, and merchandise at wholesale at the place of manufacture.

In response, Moody cites several rulings of the Commissioner of the Department of Taxation in support of its status as a manufacturer.

*Tax Rulings*

In 1986, the Tax Commissioner concluded that photo processing qualified for the manufacturing exemption from the sales and use tax when it was not an incidental part of the operation of a photography studio or camera shop. P.D. 86-73 (Apr. 22, 1986). In 2002, the Commissioner determined that computers and software used to configure information provided by the customer, particularly font size, punctuation, and similar commands, qualified for the manufacturing exemption from sales and use taxes. This conclusion was based largely on the exemption for "electronic pre-press" activities[1] as defined in the Virginia Administrative Code. That section defines "electronic pre-press" as "any process involved in taking . . . conventionally supplied artwork, electronically supplied artwork . . . and other client materials and formatting these materials into electronic commands so that they can be output as film or paper to image-setting output devices. . . ." 23 Va. Admin. Code § 10-210-6020(A) (2006).
 In 2005, the Commissioner again ruled on the issue of photo processing and confirmed that photo processing constitutes manufacturing when performed by a business primarily engaged in photo processing of customer provided film. P.D. 05-2 (Jan. 19, 2005). The Commissioner held that merely converting a source document into an electronic file format which was coded and indexed for retrieval purposes was a change in form, not content, and consequently did not constitute industrial manufacturing for the purpose of the sales and use tax. *Id.*
 Similarly, in 1999, the Commissioner confirmed that converting an original typewritten manuscript into a camera ready proof of a book, which activity included, among other things, coding copy for production, making photographs for scanning, camera work, laser proofing, and proof reading,

---

[1] P.D. 02-12 (Feb. 19, 2002).

constituted manufacturing. The Commissioner explained that for BPOL taxes, "a manufacturer means one engaged in a processing activity whereby the original materials are transformed into a product that is substantially different in character from the original materials." P.D. 99-200 (July 23, 1999). Significantly, in that ruling, the Tax Commissioner also stated that "while the BPOL tax is a different tax from the retail sales and use tax, the treatment of printing processes as industrial manufacturing under the sales and use tax is persuasive. Thus, it is my opinion that printing processing qualifies as manufacturing under the BPOL tax." *Id.*

### *Effect of Tax Rulings; Statute and Case Law*

There remains the issue of what role the Tax Commissioner's rulings should play in this analysis. Prior to enactment of § 58.1-205 in 1980, "great weight" was given to the actions of the Tax Commissioner. *Virginia Dep't of Tax. v. Progressive Cmty. Club, Inc.*, 215 Va. 732, 739, 213 S.E.2d 759, 763 (1975). Following the enactment of § 58.1-205 in 1980, the Supreme Court of Virginia, in four cases, continued to accord "great weight" to the actions of the Tax Commissioner without addressing the effect of the statute. *See Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 554 S.E.2d 55 (2001) (citations omitted). In the *Chesapeake Hospital* Case, Chief Justice Carrico clarified that, since no case subsequent to 1980 determined the effect of § 58.1-205, *stare decisis* did not necessarily foreclose inquiry into its effect on the deference due the actions of the Commissioner.

Section 58.1-205 provides the rules for "the interpretation or enforcement of the tax laws of this Commonwealth." Code § 58.1-205 provides:

> In any proceeding relating to the interpretation or enforcement of the tax laws of this Commonwealth, the following rules shall apply:
>
> 1. Any assessment of a tax by the Department shall be deemed prima facie correct.
>
> 2. Any regulation promulgated as provided by subsection B of § 58.1-203 shall be sustained unless unreasonable or plainly inconsistent with applicable provisions of law.
>
> 3. Rulings issued in conformity with § 58.1-203 and published as provided in § 58.1-204 shall be accorded judicial notice.

4. In any proceeding commenced under § 58.1-1821, § 58.1-1824, or § 58.1-1825 before January 1, 1985, unpublished rulings and other administrative interpretations which are documented and established by competent evidence to have been in effect prior to July 1, 1980, shall be accorded judicial notice and shall be given such weight as the reviewing authority deems appropriate. In all proceedings commenced after such date, such rulings and interpretations shall be subject to the provisions of subsection 5.

5. Rulings and administrative interpretations other than those described in subsections 2, 3, and 4 shall not be admitted into evidence and shall be accorded no weight, except that an assessment made pursuant to any such ruling or interpretation shall be entitled to the presumption of correctness specified in subsection 1.

It sets out rules pertaining to judicial treatment of Department of Taxation assessments, regulations, rulings, and administrative interpretations. Each is treated differently, and the differences are significant. Though the *Chesapeake Hospital* Case dealt with an assessment, not a ruling *per se*, the Chief Justice clarified that, since, under the statute, an assessment is entitled only to a presumption of correctness, the Department of Taxation may not bootstrap itself into having an assessment accorded great weight solely because the assessment is based on prior rulings which are, in the Tax Commissioner's view, entitled to great weight. The Chief Justice clearly stated that such an argument fails because the code section requires that "the Tax Commissioner's prior *rulings* and policies themselves *are not entitled to great weight*, unless expressed in regulations." *Chesapeake Hosp. Auth.*, 262 Va. at 560, 554 S.E.2d at 59-60 (emphasis added) (providing that regulations are to be sustained unless unreasonable or inconsistent with law under Va. Code § 58.1-205).

Shortly thereafter, the Supreme Court confirmed this view in *General Motors Corp. v. Commonwealth*, 268 Va. 289, 293, 602 S.E.2d 123, 125 (2004), holding that the tax department's construction of a tax statute, *in a regulation*, though not binding, is entitled to great weight. Last year, in its most recent pronouncement, the Supreme Court again stated that the department's interpretation of a tax statute is entitled to great weight, without delineating that that conclusion is limited to situations in which the department propounds regulations. The facts, however, make clear that the

department had propounded regulations. *LZM, Inc. v. Virginia Dep't of Taxation*, 269 Va. 105, 109, 606 S.E.2d 797, 799 (2005).

## Judicial Notice

Consequently, pursuant to § 58.1-205(3), the Court is to take judicial notice of "rulings."[2] Judicial notice is "a shortcut to avoid the necessity for the formal introduction of evidence in certain cases where there is no need for such evidence. It is a rule of necessity and public policy in the expedition of trials." *Williams v. Commonwealth*, 190 Va. 280, 291, 56 S.E.2d 537, 542 (1949). When "a matter is judicially noted . . . it is taken as true without the offering of evidence by the party who should ordinarily have done so. . . . But the *opponent is not prevented from disputing* the matter, if he believes it disputable." *Williams*, 190 Va. at 292, 56 S.E.2d at 542 (quoting Wigmore, *Evidence*, § 2567 (3d ed. 1946) (emphasis in original)).

## Conclusion

The rulings of the Tax Commissioner are in accord with the principles contained in the case law citations cited by the City in its Memorandum in support of summary judgment. The Commissioner's rulings apply the broad principles of the case law to more specific sets of facts. The Commissioner's rulings are undisputed by any evidence of the City. Taking judicial notice, I find those rulings to be persuasive and dispositive of the issue here. Similarly, the Commissioner's ruling that exemptions for the sales and use tax are persuasive authority for BPOL taxes, is persuasive here, both in the context of the Commissioner's rulings and the Commonwealth's exemption of Moody from sales and use taxes. In so holding, I am mindful of, and have considered, that the Constitution of Virginia, in Article X, Section 6(f), mandates that

---

[2] Judicial notice, in Virginia, has encompassed a myriad of law and facts arguably reaching its zenith in *Griffin Truck Corp. v. Smith*, 150 Va. 95, 142 S.E. 385 (1928), in which the Supreme Court of Virginia stated that "we decline, as an appellate court, to take judicial notice of what a mule would do under any given circumstances. We would prefer to commit ourselves to the proposition that there is nothing more uncertain than the action of a mule under any circumstances." *But see, Tate v. Ogg*, 170 Va. 95, 195 S.E. 496 (1938), when only a decade later the Supreme Court of Virginia in a thought provoking opinion tracing the common law definitions and issues pertaining to domestic animals (as contrasted with poultry) took "judicial cognizance" that it was "the nature of a turkey to chase a grasshopper, or other bugs, or insects, without paying much attention to fences or boundary lines."

"exemptions of property from taxation . . . shall be strictly construed." The Commissioner's rulings are in accord with the constitutional mandate, as is the holding here.