COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia

PUBLISHED

EMILY KATHERINE DELAUNE

v.     Record No. 0328-22-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
JANUARY 10, 2023

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

Melissa I. Bray, Deputy Public Defender, for appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

The issue here is whether a probationer's violation of a condition requiring her to "be

drug free" is a "technical violation" as defined by Code § 19.2-306.1(A)(vii) to include "a

violation based on the probationer's failure to . . . refrain from the use, possession, or distribution

of controlled substances or related paraphernalia."

FACTUAL BACKGROUND

Delaune was released to probation following her convictions on various controlled

substance charges for which she received a total active sentence of six years of incarceration

with four years suspended. The suspension of her sentences was conditioned on several things.

On top of general language placing Delaune on supervised probation and requiring her to

"comply with all the rules, terms and requirements set by the probation officer," the sentencing

court's order contained an additional condition: "[t]he defendant shall be drug free."

In February 2022, the court below held a hearing to address alleged violations of

Delaune's probation. Delaune stipulated that she had violated the terms and conditions of her

probation by using controlled substances and by absconding from her supervision. This hearing took place several months after legislative changes to the statutory scheme governing probation revocation took effect on July 1, 2021; however, the alleged violations took place before July 1, 2021, and a major violation report and capias alleging a failure to appear were also issued before that date.

At the hearing, Delaune argued, and the Commonwealth agreed, that her use of controlled substances was a first "technical violation" under Code § 19.2-306.1. Thus, both Delaune and the Commonwealth agreed that (because the statute automatically treated absconding as a second technical violation) the maximum sentence the court could impose under Code § 19.2-306.1(C) was 14 days. The court disagreed, concluding that the mandate to "be drug free" was a special, not technical, condition of her probation and suspended sentences. As a result, the court revoked the remaining four years of Delaune's suspended sentences and re-suspended all but 60 days.[1]

ANALYSIS

Delaune argues that the trial court abused its discretion in concluding her use of controlled substances violated a "special condition" to "be drug free" and therefore was not a "technical violation" under Code § 19.2-306.1. The Commonwealth contends that we should not reach that question here because: (1) Code § 19.2-306.1 did not apply to the revocation hearing; and (2) Delaune's assignment of error does not encompass her argument on appeal.[2] We address these issues first.

_____

[1] At the same hearing, the court found Delaune guilty of failing to appear and sentenced her to ten days, all suspended. Delaune did not appeal this conviction or sentence.

[2] After this appeal was fully briefed, and less than two weeks before argument took place, the Commonwealth submitted a Rule 5A:4A letter of supplemental authority notifying the Court that the Commonwealth believed Delaune had been wanted on a capias since May 2, 2022 "for violations of her probation and suspended sentence" and was thus "considered a fugitive," such

Code § 19.2-306.1 took effect on July 1, 2021. Because it affects penalties, this statute does not apply at a violation hearing when a probationer committed the relevant violations before the change in law and when revocation proceedings began before the statute took effect—absent agreement of the parties otherwise. *Green v. Commonwealth*, 75 Va. App. 69, 83 (2022) (citing Code § 1-239; *Ruplenas v. Commonwealth*, 221 Va. 972, 978 (1981)).[3] In *Heart v. Commonwealth*, 75 Va. App. 453, 462 (2022), we found that the parties had agreed to proceed under Code § 19.2-306.1 based on circumstances that included (1) "preparation of the guidelines under the new statute, which all parties received prior to the hearing and relied on throughout the hearing," (2) "lengthy argument about how to interpret and apply the new statute" that "all counsel participated in," and (3) the agreement of the Commonwealth "on the record that the pending violation was for a 'technical violation, third offense.'" *Id.* at 465. We find this case indistinguishable from *Heart*. The guidelines were prepared under Code § 19.2-306.1, and the Commonwealth affirmatively argued at the violation hearing that Delaune's failure to remain drug free was a technical violation under Code § 19.2-306.1, stating, "I do think I have an ethical

---

that "[u]nder the fugitive disentitlement doctrine, dismissal of the appeal is appropriate." A few days later the Commonwealth petitioned this Court under Code § 8.01-675.4 to issue a writ of certiorari to obtain a copy of a major violation report and unexecuted capias order. This Court may apply the fugitive disentitlement doctrine to dismiss an appeal when (1) the appellant is a fugitive, (2) there is a nexus between the current appeal and the appellant's status as a fugitive, and (3) dismissal is necessary to effectuate the policy concerns underlying the doctrine. *Sasson v. Shenhar*, 276 Va. 611, 623 (2008). Even assuming there is an outstanding capias for Delaune, we exercise our discretion to not apply the doctrine here because of the late hour in which the Commonwealth raised the issue (six months after the alleged capias issued and less than two weeks before argument), because no motion to dismiss the appeal was filed, and because the Commonwealth's proffer is that the capias pertains to an alleged *new* probation violation occurring after the final judgment on appeal, which would lack a sufficient nexus to this appeal. We therefore deny the outstanding petition for the writ.

[3] In *Green*, this Court reserved whether the "triggering event date" that determined which version of the law applied was when Green violated his probation or when his revocation proceedings began because "[t]he law was actually the same at the time of both events." 75 Va. App. at 83 n.4.

obligation in regards to the interpretation of the statute, and I do think [Delaune] is correct." As we concluded in *Heart*, there was an agreement to proceed under the new statute sufficient to satisfy Code § 1-239, and a contrary conclusion would allow the Commonwealth to "approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Heart*, 75 Va. App. at 465 (quoting *Cody v. Commonwealth*, 68 Va. App. 638, 665 (2018)).

At oral argument, the Commonwealth suggested that a concession made by a local prosecutor was not binding on the Office of the Attorney General on appeal, citing *In re Commonwealth*, 222 Va. 454 (1981). As this argument was not raised in *Heart*, we consider it here. *Jones v. Commonwealth*, 293 Va. 29, 50 (2017) ("[S]tare decisis does not 'foreclose inquiry' into an issue not previously 'raised, discussed, or decided.'" (quoting *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 560 (2001))).

In *In re Commonwealth*, the Supreme Court considered the finality of judgments and a circuit court's authority to suspend or otherwise modify a judgment more than 21 days after it was entered under the precursor to what is now Code § 19.2-303[4] and Rule 1:1. The Supreme Court found that a trial court has no jurisdiction to suspend a sentence more than 21 days after a sentencing order, and so the fact that the Commonwealth had consented to the trial court's entry of orders after this date did not matter. 222 Va. at 465. "The lack of subject matter jurisdiction cannot be waived and such jurisdiction cannot be conferred on a court by the litigants," and as such, "[t]he lack of subject matter jurisdiction may be raised any time." *Virginian-Pilot Media Cos. v. Dow Jones & Co.*, 280 Va. 464, 468 (2010). For the same reason, the Commonwealth

---

[4] Code §19.2-303 now allows a court to "suspend or otherwise modify the unserved portion" of a sentence "at any time before the person is transferred to the Department [of Corrections], or within 60 days of such transfer."

- 4 -

could not be "estopped from repudiating the earlier position erroneously taken by the Commonwealth's Attorney" on the court's jurisdiction to amend a final judgment. *In re Commonwealth*, 222 Va. at 465.

Here, however, the Commonwealth's election to proceed under Code § 19.2-306.1—permissible under Code § 1-239—does not implicate the court's subject matter jurisdiction. Instead, "[t]he approbate-reprobate bar allows the opposing party and the courts to rely on the position first taken when one party affirmatively assumes inconsistent legal positions on their own behalf." *Harvey v. Commonwealth*, 67 Va. App. 336, 349 (2017). All litigants are subject to the doctrine of approbate and reprobate. A conclusion otherwise would allow a party to agree that a new law applies under Code § 1-239, and if unhappy with the outcome, try again later under the old version of the law. This reversal of course is precisely what the approbate-reprobate bar is intended to prevent.

The Commonwealth separately alleges that Delaune failed to assign error to the term of incarceration the court imposed and that as such, Delaune has defaulted any appeal of her sentence. Delaune assigned the following error: "The trial court erred and abused its discretion in revoking appellant's suspended sentence based on a finding that she failed to remain drug free and was in violation of a special condition of her probation." The purpose of assignments of error is to "point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points." *Chesapeake Hosp. Auth.*, 262 Va. at 556 n.2. The issue Delaune raises here is the same one that the trial court took up below: was Delaune's use of controlled substances a violation of a "special condition" of probation that falls outside of Code § 19.2-306.1, or was it a "technical violation" of probation under the statute? Her assignment of error fairly encompasses this argument.

Turning to the merits of Delaune's argument, we must determine whether Delaune's probation violation was a "technical violation" under Code § 19.2-306.1(C). "Under well-established principles, an issue of statutory interpretation is a pure question of law which we review *de novo*." *Heart*, 75 Va. App. at 465 (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). When interpreting a statute:

> [O]ur primary objective is "to ascertain and give effect to legislative intent," as expressed by the language used in the statute. "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." [If, however,] the language of the statute "is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

*Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (citations omitted).

"Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart*, 75 Va. App. at 466. The statute "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute." *Green*, 75 Va. App. at 75.

Code § 19.2-306.1(A) defines "technical violation" to mean "a violation based on the probationer's failure to . . . (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia; . . . or (x) maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer." This paragraph concludes: "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." *Id.* For a "first technical violation," a court "shall not impose a sentence of a term of active incarceration." Code § 19.2-306.1(C). "However, if the court finds, by a preponderance of the evidence, that the

defendant committed a second technical violation and he cannot be safely diverted from active incarceration through less restrictive means, the court may impose not more than 14 days of active incarceration for a second technical violation." *Id.* Finally, "[f]or the purposes of this subsection, a first technical violation based on clause (viii) or (x) of subsection A shall be considered a second technical violation." *Id.*

Delaune admitted that she violated her probation by using controlled substances and by absconding from probation. Under Code § 19.2-306.1, a violation for failing to "maintain contact with the probation officer whereby [her] whereabouts are no longer known to the probation officer" is listed as a "technical violation" in subsection A and given automatic treatment as a "second technical violation" in subsection C. As such, the court was authorized to sentence Delaune to as many as 14 days of incarceration for this violation. The only question is whether her violation for using controlled substances was another "technical violation" that the court should have grouped together with the absconding violation or whether it was a non-technical violation.

Delaune argued below (and the Commonwealth agreed) that the violation of a condition requiring her to remain "drug free" was a "violation based on [her] failure to . . . refrain from the use, possession, or distribution of controlled substances or related paraphernalia," and thus qualified as a "technical violation." The trial court instead concluded that by separately adding the condition that Delaune remain "drug free" on top of the general conditions requiring supervised probation and good behavior, the sentencing court imposed a special condition of release not subject to the limitations in Code § 19.2-306.1(C). Because the General Assembly specifically defined "technical violation" to include any "violation *based on*" specified conduct, we disagree. The statute focuses on the underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation. When the

- 7 -

violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a "technical violation."

Delaune's failure to remain "drug free" was a failure to "refrain from the use, possession, or distribution of controlled substances." Code § 19.2-306.1 defines this to be a "technical violation" of probation, and the trial court erred by concluding otherwise. By statute, the trial court was required to group together Delaune's violation for using controlled substances with her violation for absconding from probation. Code § 19.2-306.1(A) ("Multiple technical violations . . . considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section."). Because the violation for absconding from probation is automatically treated a as "second technical violation," the maximum sentence the court could impose was 14 days of active incarceration. The court imposed a sentence in excess of this statutory limit, so we must reverse.

## CONCLUSION

For the reasons set forth above, we reverse the court's order revoking Delaune's probation and re-suspending all but 60 days of the unserved portion of her sentences and remand for resentencing in accordance with Code § 19.2-306.1.

*Reversed and remanded.*